GOOLSBY v CITY OF DETROIT

Docket No. 66657. Argued June 6, 1984 (Calendar No. 1).—Decided
December 10, 1984.

Embritt Goolsby and other employees of the environmental pro-
tection and maintenance department of the City of Detroit filed
an unfair labor practice charge against the city, alleging that
the city had improperly influenced union affairs to their detri-
ment and that their union, Council 77 and Local 26, American
Federation of State, County and Municipal Employees, AFL-
CIO, had breached its duty of fair representation in failing to
file a demand for arbitration of a grievance filed by the plain-
tiffs. The Michigan Employment Relations Commission dis-
missed the charge on the ground that the plaintiffs had failed
to show that the union had purposefully or invidiously refused
to process the grievance. The Court of Appeals, D. E. Holbrook,
Jr., P.J., and V. J. Brennan and Everett, JJ., affirmed in an
unpublished opinion per curiam on the ground that there was
insufficient evidence to prove that the union's conduct was
arbitrary, discriminatory, or in bad faith (Docket Nos. 41762,
41763). The plaintiffs appeal.

In an opinion by Justice Cavanagh, joined by Chief Justice
Williams and Justices Kavanagh, Ryan, and Brickley, the
Supreme Court *held*:

Labor organizations representing public employees have a
duty to fairly represent the employees. The duty may be
breached by bad-faith conduct in processing an employee griev-
ance or by impulsive, irrational, or unreasonable conduct; inept
conduct undertaken with little care or with indifference to the
interests of the employee; failure to exercise discretion; or
extreme recklessness or gross negligence. Absent a reasoned,
good-faith, nondiscriminatory decision not to process a griev-
ance, the failure of a labor organization to comply with the

REFERENCES FOR POINTS IN HEADNOTES

[1-5] 48 Am Jur 2d, Labor and Labor Relations §§ 398 *et seq.*, 1764 *et
seq.*

Validity and construction of statutes or ordinances providing for
arbitration of labor disputes involving public employees. 68
ALR3d 885.

[4] 48 Am Jur 2d, Labor and Labor Relations § 1151.

time limits for processing a grievance provided by a collective-bargaining agreement is a breach of the duty of fair representation.

1. The public employment relations act imposes a duty of fair representation on labor organizations representing public employees similar to the duty of fair representation imposed upon labor organizations representing employees in the private sector by the National Labor Relations Act. In construing the PERA, guidance is sought in the construction placed on analogous provisions of the NLRA by the National Labor Relations Board and the federal courts. Under federal law, a union's duty of fair representation includes the responsibilities to serve the interests of all members without hostility or discrimination, to exercise discretion with complete good faith and honesty, and to avoid arbitrary conduct. Failure to meet any of the responsibilities is a breach of the duty of fair representation. In this case, the only issue is whether the union breached its duty of fair representation in processing the plaintiffs' grievances.

2. Under both state and federal law, it is not always necessary for a plaintiff to show bad faith on the part of a union to establish that the union breached its duty of fair representation in failing to process a grievance. Arbitrary or perfunctory conduct does not require a dishonest or fraudulent intent. The conduct prohibited by the duty of fair representation includes impulsive, irrational, or unreasoned conduct; or inept conduct, undertaken with little care or with indifference to the interests of the grievant; failure to exercise discretion where the failure can reasonably be expected to have an adverse effect on any or all union members; or extreme recklessness or gross negligence that can reasonably be expected to have such an effect.

3. In this case, the inexplicable failure of union officials to process the plaintiffs' grievances within the time limits imposed by the collective-bargaining agreement was inept conduct, undertaken with little care or with indifference to the plaintiffs' interests, that could reasonably have been expected to have foreclosed plaintiffs' pursuit of their grievances. The conduct was not mere negligence because under the collective-bargaining agreement only the union and not the plaintiffs could process the grievance to arbitration. The provision was negotiated and entered into by the union, and imposed on the union the duty to file notices of arbitration within the time limits of the agreement. In addition, the effect on the plaintiffs was severe. Because the duty of the union was great, lesser conduct than would be required under different circumstances can constitute a breach of the duty of fair representation.

Justice Levin, concurring, stated that he agrees that a un-

ion's unexplained failure to process a member's grievance within procedurally prescribed time limits is a breach of the union's duty of fair representation. The union's acts or omissions in the course of processing the grievance need not be more egregious than mere negligence to constitute a breach. In this case, the union's unexplained failure to process the grievance was at least negligent.

The duty of fair representation derives from the fiduciary duty owed by a union to its members. As a fiduciary, the union must exercise at least reasonable care in discharging its obligations to its members. The precise obligation to a particular member will vary according to the union activity involved. Where the union is the exclusive agent of the member in a grievance proceeding, a failure on the part of the union to process a grievance will generally bar the member from enforcing his rights under the collective-bargaining agreement. An unexplained failure to process a grievance indicates a failure to exercise reasonable care.

Justice Boyle, concurring solely on the ground that a union's totally unexplained failure to process a grievance is arbitrary conduct and, thus, is a breach of its duty of fair representation, irrespective of whether it was done in bad faith, wrote separately to make clear that a breach of a union's duty of fair representation can only be shown by conduct that is arbitrary, discriminatory, or done in bad faith.

Reversed and remanded.

## Opinion of the Court

1. Labor Relations — Unions — Grievances — Fair Representation.

    The duty of labor organizations representing public employees to fairly represent the employees may be breached by processing an employee grievance in bad faith or by impulsive, irrational, or unreasonable conduct; inept conduct undertaken with little care or with indifference to the interests of the employee; failure to exercise discretion; or extreme recklessness or gross negligence (MCL 423.201 et seq.; MSA 17.455[1] et seq.).

2. Labor Relations — Unions — Grievances — Fair Representation.

    The failure of a union representing public employees to comply with the time limits for processing employee grievances provided by a collective-bargaining agreement, absent a reasoned, good-faith, nondiscriminatory decision not to process the grievances, was a breach of the duty of fair representation (MCL 423.201 et seq.; MSA 17.455[1] et seq.).

3. LABOR RELATIONS — UNIONS — GRIEVANCES — FAIR REPRESENTA-
   TION.

   A union's duty of fair representation includes the responsibilities
   to serve the interests of all members without hostility or
   discrimination, to exercise discretion with complete good faith
   and honesty, and to avoid arbitrary conduct; failure to meet
   any of the responsibilities is a breach of the duty of fair
   representation.

4. LABOR RELATIONS — UNIONS — GRIEVANCES — FAIR REPRESENTA-
   TION.

   Conduct that breaches a union's duty of fair representation of its
   members does not require a dishonest or fraudulent intent;
   impulsive, irrational, or unreasoned conduct, or inept conduct,
   undertaken with little care or with indifference to the interests
   of the grievant may breach the duty; inept conduct may include
   failure to exercise discretion where the failure can reasonably
   be expected to have an adverse effect on any or all union
   members (MCL 423.201 et seq.; MSA 17.455[1] et seq.).

   CONCURRING OPINION BY LEVIN, J.

5. LABOR RELATIONS — UNIONS — GRIEVANCES — FAIR REPRESENTA-
   TION.

   *A union's acts or omissions in the course of processing a griev-
   ance need not be more egregious than mere negligence to
   constitute a breach of its duty of fair representation of its
   members; where the union has sole power under the contract to
   invoke the higher stages of the grievance procedure a member
   may commence an action on the basis of the union's wrongful
   refusal to process the grievance, and wrongfulness may include
   conduct that is arbitrary, discriminatory, or done in bad faith,
   or conduct that involves ignoring a meritorious grievance or
   processing it in a perfunctory manner.*

   CONCURRING OPINION BY BOYLE, J.

6. LABOR RELATIONS — UNIONS — GRIEVANCES — FAIR REPRESENTA-
   TION.

   *A breach of a union's duty of fair representation can only be shown
   by conduct that is arbitrary, discriminatory, or done in bad faith,
   and a totally unexplained failure by a union to process a grievance
   is arbitrary conduct and a breach of the duty, regardless of
   whether it was done in bad faith.*

*Glotta, Adelman, Dinges, Davis & Riley, P.C.* (by
*Robert J. Dinges* and *Chui Karega),* and *Herman
Anderson* for the plaintiffs.

*Donald Pailen,* Corporation Counsel, and *Frank W. Jackson* and *Terri L. Hayles,* Assistants Corporation Counsel, for defendant City of Detroit.

*M. Elizabeth Bunn* and *David J. Houston* for defendant union.

Amicus Curiae:

*Miller, Cohen, Martens & Sugerman, P.C.* (by *Bruce A. Miller, Renate Klass,* and *Mark H. Cousens),* for Michigan State AFL-CIO.

CAVANAGH, J. In this case, we are asked to determine whether a union's unexplained failure to process a member's grievance constitutes a breach of the union's duty of fair representation.[1]

---

[1] Plaintiffs have also posed the issue "whether the Michigan Employment Relations Commission can arbitrarily ignore evidence of unilateral change and refusal to bargain over changes in working conditions in violation of MCL 423.210(1)(e)[; MSA 17.455(10)(1)(e)]". However, that issue has not been preserved for appeal because plaintiffs did not raise it before the MERC, have made only a brief presentation which can hardly be classified as an argument, have not cited the record to support their factual assertions in regard to that argument, have not explained how the facts asserted amount to a breach of any legally cognizable duty, and have failed to cite any authority in support of their argument.

"This is insufficient to present these questions for consideration in this forum. It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow." *Mitcham v Detroit,* 355 Mich 182, 203; 94 NW2d 388 (1959). Also *Diggs v State Bd of Embalmers & Funeral Directors,* 321 Mich 508, 516-517; 32 NW2d 728 (1948), *cert den* 335 US 885; 69 S Ct 234; 93 L Ed 424 (1948), *reh den* 335 US 905; 69 S Ct 404; 93 L Ed 439 (1949).

Also, plaintiffs have abandoned their claim, presented to the MERC and the Court of Appeals, that the city's practice of hiring from the union the latter's officials is an unfair labor practice. The hearing referee, the MERC, and the Court of Appeals resolved this issue against plaintiffs. The Court of Appeals stated:

"We do not find merit in appellants' complaint of city dominance over the union. It is not, per se, illegal for a city to hire the opposing negotiators. There was no evidence of any connection with the present grievance, nor was there a showing of employer hostility toward the union. Domination requires proof of control over the union's formation or administration. Appellants did not provide any evidence

I

Plaintiffs belonged to a group of sanitation laborers, known as white wingers, within the Environmental Protection and Maintenance Department (EPMD) of defendant City of Detroit. They wore white uniforms, and their duties consisted of picking up refuse from city streets with a hand shovel and a broom and placing it in white wheeled barrels which they pushed. Plaintiffs were represented exclusively by defendant labor union. The position of white winger was considered a light-duty job and, prior to the summer of 1975, the city's practice was to assign that duty, for the most part, to individuals who were physically unable to work on its garbage truck crews.

However, under a 1973 collective-bargaining agreement between the city and the union, employees in the job classification of sanitation laborer were all subject to the same job duties. In the summer of 1975, the city ordered the white wingers to submit to physical examinations in order to determine if they were physically able to perform all duties required of sanitation laborers. Subsequently, several white wingers were retired, placed on leaves of absence, or placed on workers' compensation. On September 8, 1975, a number of the white wingers contacted the union steward concerning the city's apparently new policy. Ten days later, a conference was held between the city and the union to discuss the situation. However, the city adhered to its position that all workers within the sanitation laborer classification had to fulfill all job duties.

---

of coercion, intimidation or interference by the city in union business. The simple fact that two former union officials were hired by the city as management officials is not, by itself, sufficient to show employer domination. *NLRB v Clinton Woolen Mfg Co,* 141 F2d 753, 758 (CA 6, 1944)." Unpublished opinion per curiam of the Court of Appeals, decided September 19, 1980 (Docket Nos. 47162, 47163).

The next day, September 19, 1975, the city gave
the union the following written notice:

"Employees who cannot perform regular job assign-
ments because of failing health are eligible for sick
leave according to the master agreement. Failing health
is a personal problem, and we do not have light jobs in
this department."

On September 30, 1975, the union instituted
grievance proceedings on behalf of plaintiffs.[2] The
first two steps of the grievance procedure were
waived and, on October 9, 1975, the grievances
were denied at the third step by the City Commis-
sion Administrative Coordinator. Under article 8
of the collective-bargaining agreement, defendant
union had 15 days to proceed to step four of the

[2] Article 8 of the 1973 collective-bargaining agreement between the
city and the union provided a five-step grievance procedure. The first
step permitted discussion of a grievance among the grievant, the
grievant's supervisor, and, at the grievant's option, the steward or
chief steward. Absent a resolution at step one, step two required that
the chief steward put the grievance in writing, that it be reviewed by
the local union president or vice president, and that one of those
officers submit it to the grievant's division head. Within five days of
the latter's receipt of the grievance, two representatives of both the
city and the union would meet to discuss the grievance, and, within
five days of that meeting, the grievant's division head would supply
the local union president a written answer.

Absent a resolution at step two, step three permitted the local
president, within five days of the step-two answer, to appeal to the
grievant's department head. Within seven days of the latter's receipt
of the appeal, three representatives of both the city and the union
would meet to discuss the grievance, and, within five days of that
meeting, the grievant's department head would supply the local union
president and Council 77 a written answer.

Absent a resolution at step three, step four permitted Council 77,
within 15 days of the step-three answer, to refer the grievance to the
Appeal and Review Board. The board could consist of up to four
representatives of both the city and the union. Within ten days of the
board's meeting, the city would supply the local union president and
Council 77 a written answer.

Finally, absent a resolution at step four, step five permitted, within
ten days of the step-four answer, invocation by written notice of
binding arbitration. Article 8 made no mention of who was permitted
or required to invoke step five.

grievance procedure by referring the grievance to the Appeal and Review Board. At a Local 26 union meeting conducted on October 24, 1975, members were told that the grievances were being processed by Council 77. Also, the District Council 77 executive director testified before the hearing referee that, as a matter of policy, he processed all step-three grievances to step four. In fact, defendant union did not proceed to step four within the 15-day time period.

On February 17, 1976, plaintiffs filed unfair labor practice charges, alleging that the city had improperly influenced union affairs to plaintiffs' detriment and that the union had breached its duty of fair representation.

The hearing referee found, and no one disputes, that the failure to process the grievance was without explanation:

"In the present case, the white wing grievance stopped at the third step. What happened to it is a matter of conjecture. Local union president Robertson testified he pushed for arbitration. Council 77 personnel say they didn't get the request, which brings up three possibilities. First, the local didn't press the matter the way they said they would by written request through union channels. Secondly, Council 77 mishandled the grievance processing or thirdly, that someone in the local or council purposely dropped the entire thing. From the testimony, it appears as though either the local or Council 77 representatives mishandled the grievance by neglecting to follow procedure, to process the grievance to arbitration. The question is, then, is this lack of action, arguably, an unfair labor practice under PERA—without any further inquiry as to merit or lack of it in the grievance itself?

"In this case, there is an absence of evidence of purpose (or motive, if you will) to the failure of the union local or council to pursue the grievance. The

subject matter had been the object of a special confer-
ence with the city. Both the local union and the union
council, though passing the blame for failure to process
back and forth, apparently show no hostility, animosity,
or invidious motivation toward any of the white wing-
ers, or their claim. At best, from the viewpoint of the
charging party, the union local or council did not
efficiently do as they said they would. Absent other
considerations, such action is not, in the opinion of this
writer, an unfair labor practice under Michigan law".

Accordingly, the referee recommended dismissal
of the action and, on August 11, 1979, the Michi-
gan Employment Relations Commission issued its
decision, adopting that recommendation:

"Where the union has vigorously pursued the griev-
ance through three steps of the grievance procedure
and no animosity is shown, we will presume that the
union has fulfilled its collective-bargaining obligation.
There is insufficient evidence to prove that the union's
handling of the grievance was discriminatory or that
the employer affected its handling. The apparent negli-
gence in failing to request arbitration does not consti-
tute a breach of the duty of fair representation, where
no unlawful intent has been proven. *[Local 542, Council
77,] American Federation of State, County & Municipal
Employees, AFL-CIO [v Rupinski],* 1977 MERC Lab Op
861. We find that no breach of the union's duty took
place and the [hearing referee's] disposition of this case
is correct."

The Court of Appeals affirmed the MERC:

"There is insufficient evidence to prove under *Vaca [v
Sipes,* 386 US 171; 87 S Ct 903; 17 L Ed 2d 842 (1967)]
or *Lowe [v Hotel & Restaurant Employees Union, Local
705,* 389 Mich 123; 205 NW2d 167 (1973)] that the
union's conduct was arbitrary, discriminatory or in bad
faith. The failure to request arbitration does not consti-

tute a breach of the duty of fair representation, where no unlawful intent has been proven."[3]

We granted leave to appeal on August 23, 1983.[4]

## II

Essentially, plaintiffs claim that both the MERC and the Court of Appeals erred by requiring them to show unlawful intent in order to establish a breach of the union's duty of fair representation. It is clear that a labor organization has a duty, imposed by various labor law statutes,[5] to fairly represent its members.

[3] Unpublished opinion per curiam of the Court of Appeals, decided September 19, 1980 (Docket Nos. 47162, 47163). Plaintiff's application for rehearing was denied on January 30, 1981.

[4] 417 Mich 1097 (1983).

[5] The rights and responsibilities imposed on labor organizations representing private sector employees by statutes like the National Labor Relations Act, 29 USC 151 *et seq.*, and the Railway Labor Act, 45 USC 151 *et seq.*, and by the national labor policies which those statutes implement impliedly impose on labor organizations representing private sector employees a duty of fair representation. See, *e.g., Ford Motor Co v Huffman,* 345 US 330, 336-337; 73 S Ct 681; 97 L Ed 1048 (1953); *Tunstall v Brotherhood of Locomotive Firemen & Enginemen,* 323 US 210, 211-214; 65 S Ct 235; 89 L Ed 187 (1944); *Steele v Louisville & N R Co,* 323 US 192, 198-203; 65 S Ct 226; 89 L Ed 173 (1944).

Similarly, our labor mediation act, MCL 423.1 *et seq.;* MSA 17.454(1) *et seq.,* and public employment relations act, MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.,* are patterned after the NLRA. Thus, this Court has stated that in construing our state labor statutes we look for guidance to "the construction placed on the analogous provisions of the NLRA by the [National Labor Relations Board] and the Federal courts". *Rockwell v Crestwood School Dist Bd of Ed,* 393 Mich 616, 636; 227 NW2d 736 (1975), *reh den* 394 Mich 944 (1975), *app dis sub nom Crestwood Ed Ass'n v Bd of Ed of School Dist of Crestwood,* 427 US 901; 96 S Ct 3184; 49 L Ed 2d 1195 (1976). Also *Michigan Employment Relations Comm v Reeths-Puffer School Dist,* 391 Mich 253, 259-260; 215 NW2d 672 (1974); *Detroit Police Officers Ass'n v Detroit,* 391 Mich 44, 53; 214 NW2d 803 (1974). Consequently, since the rights and responsibilities imposed on labor organizations representing public sector employees by PERA, see MCL 423.207(1); MSA 17.455(7)(1), MCL 423.209; MSA 17.455(9), MCL 423.211; MSA 17.455(11), MCL 423.215; MSA 17.455(15), are similar to those im-

"The statutory duty of fair representation was developed over 20 years ago in a series of cases involving alleged racial discrimination by unions certified as exclusive bargaining representatives under the Railway Labor Act, see *Steele v Louisville & N R Co,* 323 US 192; 65 S Ct 226; 89 L Ed 173 [(1944)]; *Tunstall v Brotherhood of Locomotive Firemen,* 323 US 210; 65 S Ct 235; 89 L Ed 187 [(1944)], and was soon extended to unions certified under the NLRA, see *Ford Motor Co v Huffman,* [345 US 330; 73 S Ct 681; 97 L Ed 1048 (1953)]. Under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct. *Humphrey v Moore,* 374 US [335], 342; [84 S Ct 363;] 11 L Ed 2d [370 (1964)].

\* \* \*

"A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective-bargaining unit is arbitrary, discriminatory, or in bad faith. See *Humphrey v Moore, supra; Ford Motor Co v Huffman, supra.* There has been considerable debate over the extent of this duty in the context of a union's enforcement of the grievance and arbitration procedures in a collective-bargaining agreement.

\* \* \*

"Though we accept the proposition that a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion, we do not agree that the individual employee has an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective-bargaining agreement.

---

posed on labor organizations representing private sector employees by the NLRA, it must be concluded that PERA impliedly imposes on labor organizations representing public sector employees a duty of fair representation which is similar to the duty imposed by the NLRA on labor organizations representing private sector employees. See *Demings v City of Ecorse,* 127 Mich App 608, 615-617; 339 NW2d 498 (1983).

* * *

"[T]he union's statutory duty of fair representation protects the individual employee from arbitrary abuses of the settlement device by providing him with recourse against both employer (in a § 301 suit) and union * * *.

* * *

"In administering the grievance and arbitration machinery as statutory agent of the employees, a union must, in good faith and in a nonarbitrary manner, make decisions as to the merits of particular grievances. See *Humphrey v Moore, [supra]; Ford Motor Co v Huffman, [supra]*. * * * [T]he individual employee has no absolute right to have his grievance arbitrated under the collective-bargaining agreement at issue, and * * * a breach of the duty of fair representation is not established merely by proof that the underlying grievance was meritorious". *Vaca v Sipes,* 386 US 171, 177, 190, 191, 193, 194-195; 87 S Ct 903; 17 L Ed 2d 842 (1967). Also *International Brotherhood of Electrical Workers v Foust,* 442 US 42, 46-47, 51; 99 S Ct 2121; 60 L Ed 2d 698 (1979).

This Court too has discussed the duty of fair representation.

"A labor union has a duty fairly to represent its members.

"This duty arises from the nature of the relationship between the union and its members. The union and its members do not deal at arms length.

"The union speaks for the member. It makes a contract of employment on his behalf. The union offers its member solidarity with co-workers, expertise in negotiation, and faithful representation. In exchange, the member pays his union dues, and gives his support and loyalty to the union.

"In many ways, the relationship between a union and its member is a fiduciary one. Certainly, it is a relationship of fidelity, of faith, of trust, and of confidence.

"If the courts have stopped short of declaring the union and member relationship a fully fiduciary one, it

is because the union, by its nature, has a divided loyalty.

"It must be faithful to each member, to be sure, but it must be faithful to all of the members at one and the same time.

"The union must be concerned for the common good of the entire membership. This is its first duty.

"That duty of concern for the good of the total membership may sometimes conflict with the needs, the desires, even the rights of an individual member.

"When the general good conflicts with the needs or desires of an individual member, the discretion of the union to choose the former is paramount.

"When the general good conflicts with the legal or civil rights of an individual member, the courts will recognize those rights and enforce them as against the will of the majority of the union membership.

"In the area of grievances, the courts have held that the union has considerable discretion to decide which grievances shall be pressed and which shall be settled. It has been said that the union has latitude to investigate claimed grievances by members against their employers, and has the power to abandon frivolous claims. *Vaca v Sipes,* 386 US 171; 87 S Ct 903; 17 L Ed 2d 842 (1967).

"It has been held that an individual member does not have the right to demand that his grievance be pressed to arbitration, and the union 'obviously' is not required to carry every grievance to the highest level, but must be permitted to assess each with a view to individual merit. *Gunkel v Garvey,* 45 Misc 2d 435; 256 NYS2d 953 (1964).

"Having regard for the good of the general membership, the union is vested with discretion which permits it to weigh the burden upon contractual grievance machinery, the amount at stake, the likelihood of success, the cost, even the desirability of winning the award, against those considerations which affect the membership as a whole.

"In doing so, the courts have said that the union must act without fraud, bad faith, hostility, discrimination, arbitrariness, caprice, gross nonfeasance, collusion, bias, prejudice, wilful, wanton, wrongful and malicious

refusal, personal spite, ill will, bad feelings, improper motives, misconduct, overreaching, unreasonable action, or gross abuse of its discretion in processing or refusing or failing to process a member's grievance." *Lowe v Hotel & Restaurant Employees Union, Local 705,* 389 Mich 123, 145-147; 205 NW2d 167 (1973). Also, see generally, Anno: *Union's Liability in Damages for Refusal or Failure to Process Employee Grievance,* 34 ALR3d 884.

Although *Vaca, supra,* and *Lowe, supra,* appear to set forth a simple rule, they have engendered much debate over the requisite evidentiary proofs and burdens, especially as regards union enforcement of grievance procedures embodied in collective-bargaining agreements. In *Vaca, supra,* p 177, the Supreme Court of the United States made it clear that a union's duty of fair representation is comprised of three distinct responsibilities: (1) "to serve the interests of all members without hostility or discrimination toward any", (2) "to exercise its discretion with complete good faith and honesty", and (3) "to avoid arbitrary conduct". A union's failure to comply with any one of those three responsibilities constitutes a breach of its duty of fair representation.

"A union must conform its behavior to each of these three separate standards. First, it must treat all factions and segments of its membership without hostility or discrimination. Next, the broad discretion of the union in asserting the rights of its individual members must be exercised in complete good faith and honesty. Finally, the union must avoid arbitrary conduct. Each of these requirements represents a distinct and separate obligation, the breach of which may constitute the basis for civil action." *Griffin v International Union, United Automobile, Aerospace & Agricultural Implement Workers of America UAW,* 469 F2d 181, 183 (CA 4, 1972). Also *Tedford v Peabody Coal Co,* 533 F2d 952, 957 (CA 5, 1976); *Ruzicka v General Motors Corp,* 523

F2d 306, 309-310 (CA 6, 1975), *reh den* 528 F2d 912 (CA 6, 1975) *(Ruzicka I)*.

Nevertheless, it must be kept in mind that

"[t]he major goal of the duty of fair representation is to identify and protect individual expectations as far as possible without undermining collective interests. Where the individual and collective group interests clash, the former must yield to the latter. When collective bargaining agreements are executed, there may be many provisions which lead individual employees to believe they are entitled to specified benefits but, in the final analysis, the collective group interests must remain paramount. The nature of any labor policy requires an election between preserving the group interests through democratic processes and adopting external restraints to protect the minority." *Tedford, supra,* pp 956-957.

In this case, plaintiffs' unfair labor practice charge against the union did not allege discriminatory conduct. However, it did allege that the union had acted in bad faith and arbitrarily. Nevertheless, it is undisputed that plaintiffs failed to present sufficient evidence upon which to find that the union acted in bad faith. Thus, the only question before us is whether plaintiffs presented sufficient evidence to find that the union breached its duty of fair representation by arbitrary conduct in the processing of their grievances.[6]

---

[6] In this state, a person claiming that a labor organization has breached its duty of fair representation can institute an administrative or a judicial proceeding, the former by filing an unfair labor practice charge with the NLRB or the MERC, the latter by filing a complaint with a federal district or state circuit court. In either context, sufficient facts regarding the alleged breach must be presented to withstand a motion for summary judgment, pursuant to GCR 1963, 117.2 (1) or (3), or its administrative equivalent. However, in this case, we are not concerned with the adequacy of plaintiffs' unfair labor practice charge against the union alleging a breach of the duty of fair representation. Rather, we are reviewing

"As in this case, courts generally have little difficulty in applying the 'discriminatory' and 'bad faith' standards of conduct to the facts presented to them. However, there is significant uncertainty in the cases as to what constitutes 'arbitrary' conduct and as to how arbitrary conduct is distinguishable from negligent conduct. See *Barhitte v Kroger Co,* 85 CCH Labor Cases ¶ 11,081 at p 20,231 (WD Mich, 1978). Due to this difficulty, the Court finds that some general discussion of what constitutes arbitrary and negligent conduct in fair representation cases is necessary." *Dutrisac v Caterpillar Tractor Co,* 511 F Supp 719, 723 (ND Cal, 1981).

A. *Federal Cases.*

Since *Vaca, supra,* the United States Supreme Court has not spoken definitively to the problem before us. However, the federal district and circuit courts have had scores of suits raising the same issue, some on remarkably similar facts. Moreover, even though there has been disagreement over the conduct required by the three responsibilities composing the duty of fair representation, it has generally been recognized that *Vaca* enlarged that duty.

"*Vaca's* 'repeated references to "arbitrary" union conduct reflects a calculated broadening of the fair representation standard.' * * * Thus, an inexplicable failure to fully process a grievance, without a determination of its merit, has been held to be so negligent that it amounts to 'arbitrary and perfunctory' handling.

\*    \*    \*

"[However, i]t suffices that the union decides in good faith and on the basis of objective, rational criteria that the grievance lacks sufficient merit to justify the ex-

---

whether, as a matter of law, sufficient evidence was introduced at the hearing for plaintiffs to prevail on the merits.

pense of arbitration." *Curth v Faraday, Inc,* 401 F Supp 678, 681 (ED Mich, 1975).[7]

The *Curth* court, while acknowledging a union's heightened responsibilities under the duty of fair representation, nevertheless blurred the distinctions between the three separate components of that duty. Indeed, although the plaintiff's claim was one of arbitrary union conduct, the court went on to state that the fact that "the union refused to arbitrate a claim which it believed was meritorious * * * standing alone, supports neither an inference of bad faith nor one of discriminatory intent". *Id.,* p 682, fn 6.[8] Finally, the court held that the union's failure to arbitrate a grievance because of a lack of local union funds and because of a perception that the arbitrator would rule against the grievance did not constitute bad-faith or arbitrary conduct.

Subsequently, in a landmark, but different, case, the Sixth Circuit made the following comments which apply with equal force to *Curth:*

"We believe that the District Court misread *Vaca* when it held that 'bad faith' must be read into the separate and independent standards of 'arbitrary' or 'discriminatory' treatment. Union action which is arbi-

[7] *Cf. Tedford v Peabody Coal Co,* 533 F2d 952, 957 (CA 5, 1976):
"The arbitrariness standard is difficult to define. However, we think a decision to be nonarbitrary must be (1) based upon relevant, permissible union factors which excludes the possibility of it being based upon motivations such as personal animosity or political favoritism; (2) a rational result of the consideration of those factors; and (3) inclusive of a fair and impartial consideration of the interests of all employees." Also *Seymour v Olin Corp,* 666 F2d 202, 208 (CA 5, 1982).

[8] But compare *Cronin v Sears, Roebuck & Co,* 588 F2d 616, 620 (CA 8, 1978) ("The mere failure to take the dispute to arbitration does not in itself prove bad faith or establish liability"), with *Harrison v United Transportation Union,* 530 F2d 558, 561 (CA 4, 1975), *cert den* 425 US 958; 96 S Ct 1739; 48 L Ed 2d 203 (1976) ("[P]roof of a grievance's merit is circumstantial evidence that the failure to process the claim constituted bad faith").

trary or discriminatory need not be motivated by bad faith to amount to unfair representation." *Ruzicka I, supra,* p 310.

The court found that the union's unexplained failure to process a grievance within time limits prescribed by a collective-bargaining agreement, unrelated to the merits of the grievance, was negligent and "a clear example of arbitrary and perfunctory handling of a grievance" amounting to unfair representation. *Id.*

"[W]hen a union makes no decision as to the merit of an individual's grievance but merely allows it to expire by negligently failing to take a basic and required step towards resolving it, the union has acted arbitrarily and is liable for a breach of its duty of fair representation." *Id.*

Concurring, Judge McCree agreed with the result, but not the reasoning, of the majority.

"I do not believe that the local union's handling of the grievance was 'arbitrary' or 'perfunctory' as the majority opinion determines.

\* \* \*

"*Arbitrary* and *perfunctory* are adjectives characterizing *intentional* conduct that is capricious or superficial. Here there was an *unintentional* failure to act that prevented appellant's grievance from being submitted to arbitration.

"Nevertheless, I would hold that when a statutorily established exclusive bargaining representative fails to file a statement that is a prerequisite for submission of an employee's claim to arbitration, not because the union has made a good faith judgment for a lawful reason that it should not file the document, but merely because of its negligent omission, then it has breached its duty of fair representation.

"I do not suggest, however, that a union should be

held liable for all negligence in processing an employee's grievance.

* * *

"Nevertheless, I believe that a total failure to act, whether negligent or intentional, except for a proper reason, is behavior so egregious that, as in the case of bad faith, hostile discrimination, arbitrariness, or perfunctoriness, the union should be held responsible." *Id.,* pp 315-316.

Thereafter, in applying *Ruzicka I,* it was stated that

"[i]f a union breaches its duty of fair representation in failing to process a grievance before determining its merit, it is certainly liable for failing to initiate a grievance after acknowledging its merit." *Ruggirello v Ford Motor Co,* 411 F Supp 758, 760 (ED Mich, 1976).

The Sixth Circuit has also reaffirmed the proposition that

"[b]ad faith is not, however, a necessary element of proof when alleging arbitrary or discriminatory conduct by a union. *[Ruzicka I, supra.]* In some instances, it is necessary to show only that the union has processed a grievance in a perfunctory fashion. *Vaca v Sipes, supra,* * * *. Certainly the duty of fair representation may be breached whenever a union ineptly handles a grievance because it is ignorant of those contract provisions having a direct bearing on the case." *Milstead v International Brotherhood of Teamsters, Local Union No 957,* 580 F2d 232, 235 (CA 6, 1978).

The court implied that the defendant's conduct was perfunctory, *i.e.,* breached its duty of fair representation, because it inadequately investigated the plaintiff's grievance and because it was unprepared to effectively present the grievance to a joint employer-employee grievance committee.

The Eighth Circuit, noting *Ruzicka I, supra,* has "indicate[d] * * * that in an appropriate case, improper motivation may not be required where perfunctory conduct is alleged and proved". *Ethier v United States Postal Service,* 590 F2d 733, 737, fn 3 (CA 8, 1979), *cert den* 444 US 826; 100 S Ct 49; 62 L Ed 2d 33 (1979). In *Ethier,* although a union steward missed a grievance filing deadline, his conduct was not inexplicable as in *Ruzicka I.* Rather, he "pursued the grievance with vigor and erred only in failing to anticipate how the Agreement['s time limits] would ultimately be construed by an arbitrator". Thus, there was no perfunctory conduct and no breach of the duty of fair representation. *Ethier, supra,* p 736.

In *Wyatt v Interstate & Ocean Transport Co,* 623 F2d 888, 890-891 (CA 4, 1980), the Fourth Circuit reaffirmed its view of the three distinct standards of conduct comprising the duty of fair representation which it first expressed in *Griffin, supra.* Then, citing, among other cases, *Ruzicka I,* it stated that

"[t]o sustain a member's action against his union under *Griffin* standards, it is not necessary that the union's breach be intentional. A union representative could be so indifferent to the rights of members or so grossly deficient in his conduct purporting to protect the rights of members that the conduct could be equated with arbitrary action. * * * In the final analysis the right of an individual employee to have his grievance processed depends on the provision of the applicable collective bargaining agreement and the facts of each case." *Wyatt, supra,* p 891.

Nevertheless, the court also stated that "[l]iability for failure to represent, however, cannot be predicated upon simple negligence but must reach the degree of culpability discussed in *Griffin, Harrison*

*[v United Transportation Union,* 530 F2d 558 (CA
4, 1975), *cert den* 425 US 958; 96 S Ct 1739; 48 L
Ed 2d 203 (1976)] and *Vaca". Wyatt, supra,* p 891.

The Sixth Circuit reiterated its view of *Ruzicka I*
in *Ruzicka v General Motors Corp,* 649 F2d 1207,
1209 (CA 6, 1981) *(Ruzicka II)*. Moreover, in *Ruz-
icka II,* the court explained in greater detail the
effect of its decision in *Ruzicka I*.

"In *Ruzicka I* we held that, absent justification or
excuse, a union's negligent failure to take a basic and
required step, unrelated to the merits of the grievance,
is a clear example of arbitrary and perfunctory conduct
which amounts to unfair representation. 523 F2d 310.
In our order denying the petition for rehearing, we
observed that '[o]ur opinion in this action speaks to a
narrow range of cases in which unexplained union
inaction, amounting to arbitrary treatment, has barred
an employee from access to an established union-man-
agement apparatus for resolving grievances.' 528 F2d
913. The key to *Ruzicka I,* then, was our holding that
'unexplained union inaction' which substantially preju-
dices a member's grievance could amount to the type of
arbitrary conduct which evidences unfair representa-
tion. The procedural posture of the appeal, coming to us
as it did with an incomplete record, did not present an
opportunity for us to make a final ruling as to the legal
viability of any explanation the union might proffer.
The district court was correct in ruling that since the
dismissal was under [FR Civ P] 41(b), our holding was
only that Ruzicka's evidence was legally sufficient to
constitute a prima facie case of unfair representation
and the remand to the district court was for further
proceedings in which the defendant could then present
any evidence it might have." *Ruzicka II, supra,* p 1211.

The court made it clear that, if the failure to
comply with the collectively bargained grievance
procedure time limits was due to reliance on past
practice, *i.e.,* the time limits were traditionally not
enforced because extensions were freely granted,

then the union did not breach its duty of fair representation by acting arbitrarily, perfunctorily, or ineptly. *Id.,* pp 1211-1212. Also *Ruzicka v General Motors Corp,* 707 F2d 259 (CA 6, 1983), *cert den* — US —; 104 S Ct 424; 78 L Ed 2d 359 (1983) *(Ruzicka III).* The court emphasized that a mistaken reliance on past practice amounts to no more than ordinary negligence and that "we cannot hold a union liable for breach of the duty of fair representation based upon simple negligence". *Id.,* p 1212.

"[W]e see no reason to apply a stricter standard to a union's untimely filing of a statement based on past practice than is applied to a union's decision not to pursue a grievance that it believes to be without merit. In both cases, the union can articulate a sufficient legal rationale to justify the manner in which a grievance has been handled. Whatever the rationale, the standard against which it is judged should be uniform. A contrary conclusion would inject the court's *[sic]* into the process of second-guessing a union representative's decisions and would undermine a union's ability to rely on prevailing practices. This view is supported by the decisions of the other circuits which are unanimous in holding that ordinary negligence, without more, cannot establish a breach of the duty of fair representation. * * * Of course, when a bargaining representative acts arbitrarily in failing to process a grievance submitted to it by an employee without a sound reason for its decision, *i.e.,* without reliance on a prevailing practice, our holding in *Ruzika I* will render the union liable for unfair representation." *Ruzika II, supra,* p 1212.

In essence, arbitrary conduct constituting a breach of the duty of fair representation is that "which reflects reckless disregard for the rights of the individual employee". *Id.*

In *Hoffman v Lonza, Inc,* 658 F2d 519, 520 (CA 7, 1981), the Seventh Circuit held "that an action

for breach of the duty to fairly represent requires more than a showing that the union failed to properly process the employee's grievance". In *Hoffman,* the union "forgot" to comply with collectively bargained grievance procedure time limits. The court, relying on dicta in *Amalgamated Ass'n of Street, Electric Railway & Motorcoach Employees of America v Lockridge,* 403 US 274, 299-300; 91 S Ct 1909; 29 L Ed 2d 473 (1971), *reh den* 404 US 874; 92 S Ct 24; 30 L Ed 2d 120 (1971), a case involving a pre-emption issue and, only marginally, alleged *discriminatory* conduct by the union, concluded that the United States Supreme Court requires a showing of intentional misconduct to make out a breach of the duty of fair representation due to arbitrary conduct. The court reached its conclusion on the basis of two policy factors: (1) to limit court interference with the subject of collective bargaining which is properly within the jurisdiction of the National Labor Relations Board,[9] and (2) to reduce the possibility of collusion between unions and employees, "both of whom may share the same ultimate goal of reinstatement of the employee". *Hoffman,* p 522. However, in reaching its conclusion, the court did not properly distinguish the three distinct standards of conduct which compose the duty of fair representation.

"The legal action based on the union's duty to fairly represent might be more properly labeled as an action for the union intentionally causing harm to an employee involved in a grievance proceeding. The 'duty' is not breached and the employee has no remedy without substantial evidence of fraud, deceitful action or dishon-

[9] This reason is specious, since the United States Supreme Court has held that both the NLRB and federal district courts have jurisdiction over complaints that a union has breached its duty of fair representation. *Vaca, supra.* Also *Demings,* fn 5 *supra,* pp 617-622.

est conduct. * * * We must therefore part company with the Sixth Circuit, and hold that an action for failure to fairly represent cannot be based solely on an allegation that a union unintentionally failed to file a notice that would permit a grievance to proceed to arbitration.

\* \* \*

"Mere negligence cannot rise to the level of misconduct necessary to support an action for breach of the Union's duty of fair representation. Stating that the Union should have considered the merits of Hoffman's grievance rather than permitting his claim to lapse by failing to file a timely notice of appeal does nothing more than describe the Union's alleged negligence. It does not state a claim of arbitrary, discriminatory, or bad faith conduct." *Id.,* pp 522-523.

Concurring, Judge Cudahy criticized the majority's reliance on *Lockridge* and argued that a breach of the duty of fair representation due to arbitrary conduct did not require an intentional act, but merely egregious behavior. To hold otherwise would render meaningless the "arbitrary" portion of *Vaca's* tripartite standard of conduct. *Id.,* pp 523-525 (Cudahy, J., *concurring*).

"Deference to union decisionmaking is essential to the purposes of the *Vaca* standard. But deference to a union's *failure* to make a decision serves no valid union interest." *Id.,* p 525.

Finally, in *Dutrisac, supra,* p 724, the court concluded that

"an unintentional omission by a union representative amounts to a breach of the duty of fair representation when the omission reflects a reckless disregard for the rights of the employee, the omission severely prejudices the employee, and the policies underlying the duty of fair representation would not be served by shielding the union from liability in the circumstances of the particular case. Where these three elements are satisfied, the

omission is classified as being so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary." Also *Robesky v Qantas Empire Airways Ltd,* 573 F2d 1082 (CA 9, 1978).

Further, after reviewing *Ruzicka I, Curth,* and *Ruggirello,* the court stated:

"[w]here there is no determination of the merits of an employee grievance and the union negligently misses a time limit resulting in depriving the employee of access to the mandatory grievance dispute process, the union has acted arbitrarily and so has breached its duty of fair representation. Where there has been a determination that a grievance is meritorious and the union negligently misses a time limit resulting in depriving the employee of access to the mandatory grievance dispute process, the union has acted arbitrarily and so has breached its duty of fair representation. Where there has been a determination that a grievance is meritorious and the union determines not to process the grievance based on rational, objective criteria, the union has not acted arbitrarily and so has not breached its duty of fair representation. And, of course, where the union determines that the grievance is not meritorious, and for whatever reason it is not processed, the union has not acted arbitrarily, and so has not breached its duty of fair representation." *Dutrisac, supra,* pp 726-727.

Finally, the court concluded that the conduct of the union in the case before it did not amount to mere negligence which shielded the union from liability.

"[I]n the case of a terminated employee, the failure to comply with a time limit which is clear on its face, where a determination has been made that an employee grievance has some merit, and where the missing of the time limit has the effect of depriving an employee of the mandatory grievance procedures pro-

vided by the collective bargaining agreement between an employer and a union, is arbitrary conduct constituting a breach of the duty of fair representation, and no matter how innocently the time limit was missed, such conduct cannot constitute 'mere' negligence." *Id.,* p 727.

## B. *Michigan Cases.*

Since *Lowe, supra,* this Court has not definitively addressed the problem now before us.[10] However, the Court of Appeals has had several opportunities to analyze the issue.

In *Kennedy v UAW-AFL-CIO Local No 659,* 3 Mich App 629, 632; 143 NW2d 133 (1966), the Court of Appeals implied in dicta that summary disposition would have been proper because the plaintiff alleged "no bad faith, arbitrary action or fraud on the part of the union in processing his grievance". Also *Field v Local 652 UAW AFL-CIO,* 6 Mich App 140, 146-147; 148 NW2d 552 (1967).

The oft-stated maxim that "a union is not liable to a member for breach of its duty of fair representation for mere negligence" was repeated by the Court of Appeals in *Sims v United Papermakers & Paperworkers AFL-CIO,* 26 Mich App 129, 132; 182 NW2d 90 (1970). Although citing the three standards of conduct set down in *Vaca,* the Court of Appeals found them not to encompass the union's failure to timely demand arbitration of the plaintiff's grievance. Accordingly, it was held that, since the complaint alleged only simple negligence, summary judgment should have been granted in favor of the union, *i.e.,* the complaint did not state a claim for a breach of the duty of fair representation. *Sims, supra,* pp 132-135.

Conversely, in *Handwerk v United Steelworkers*

[10] See *Bebensee v Ross Pierce Electric, Inc,* 400 Mich 233, 244-247; 253 NW2d 633 (1977), for a general discussion of the duty of fair representation.

*of America,* 67 Mich App 747, 750-753; 242 NW2d
514 (1976), the Court of Appeals found that allega-
tions regarding the union's failure to timely de-
mand arbitration pursuant to collectively bar-
gained grievance procedure time limits did state a
cause of action for a breach of the duty of fair
representation due to arbitrary conduct so as to
withstand a motion for summary judgment under
GCR 1963, 117.2(1). The Court distinguished *Sims*
as a pre-*Lowe* case. Thus, it relied not on *Sims,* but
on *Ruzicka I.*

In *Merdler v Detroit Bd of Ed,* 77 Mich App 740,
746; 259 NW2d 211 (1977), the union did not
process the plaintiff's grievance because it found
the grievance to be without merit. The Court of
Appeals, citing *Handwerk,* found that such con-
duct was not negligent. However, the Court of
Appeals essentially held that the plaintiff's allega-
tions of bad-faith conduct on the part of the union
amounting to a breach of the duty of fair represen-
tation were conclusory and insufficient to state a
claim. Thus, summary judgment under GCR 1963,
117.2(1) in favor of the union was proper. *Merdler,
supra,* pp 745-747. Also *Martin v Shiawassee
County Bd of Comm'rs,* 109 Mich App 32; 310
NW2d 896 (1981).

Similarly, in *Pearl v Detroit,* 126 Mich App 228,
235-238; 336 NW2d 899 (1983), the union did not
demand arbitration of the plaintiff's grievance
because it found the grievance to be without merit.
The Court of Appeals held that the plaintiff's
allegations of bad faith and discriminatory and
arbitrary conduct on the part of the union
amounting to a breach of the duty of fair represen-
tation were conclusory and, since the union had
submitted affidavits and depositions showing that
its conduct was proper which the plaintiff did not

rebut, summary judgment under GCR 1963, 117.2(3) in favor of the union was appropriate.

## III

We must decide, generally, what constitutes arbitrary union conduct amounting to a breach of the duty of fair representation, and, specifically, whether defendant union's conduct in this case falls within that general definition. Initially, we think it clear that both the MERC and the Court of Appeals erred by requiring plaintiffs to show bad faith on the part of the union in order to establish a breach of the duty of fair representation due to arbitrary conduct. Indeed, the language of both *Vaca* and *Lowe* points out the error of the MERC and the Court of Appeals analyses.[11]

An examination of the words in question is in order. As Judge McCree noted in *Ruzicka I,* both "arbitrary" and "perfunctory" are adjectives indicating an intentional act or omission. A standard dictionary definition of "arbitrary" is "determined by whim or caprice", while that of "perfunctory" is "done or acting routinely and with little interest or care". Similarly, "whim" means "a sudden or capricious idea", while "caprice" means "an impulsive change of mind".

"The words 'arbitrary' and 'capricious' have generally accepted meanings. The United States Supreme Court has defined the terms as follows:

"Arbitrary is: ' "[W]ithout adequate determining principle * * * Fixed or arrived at through an exercise of will or by caprice, without consideration or adjustment with reference to principles, circumstances, or significance, * * * decisive but unreasoned" '.

"Capricious is: ' "[A]pt to change suddenly; freakish; whimsical; humorsome" '.

---

[11] See the introductory portion of part II.

*"United States v Carmack,* 329 US 230, 243; 67 S Ct 252; 91 L Ed 209 (1946)." *Bundo v City of Walled Lake,* 395 Mich 679, 703, fn 17; 238 NW2d 154 (1976).

In contrast, "bad faith" indicates an intentional act or omission undertaken dishonestly or fraudulently. Arbitrary or perfunctory conduct does not require a dishonest or fraudulent intention for its accomplishment. Consequently, a union, through arbitrary conduct and absent any bad faith, can breach its duty of fair representation.

Further, for purposes of PERA, we do not interpret a union's responsibility to avoid arbitrary conduct narrowly.[12] In addition to prohibiting impulsive, irrational, or unreasoned conduct, the duty of fair representation also proscribes inept conduct undertaken with little care or with indifference to the interests of those affected. We think the latter proscription includes, but is not limited to, the following circumstances: (1) the failure to exercise discretion when that failure can reasonably be expected to have an adverse effect on any or all union members, and (2) extreme recklessness or gross negligence which can reasonably be expected to have an adverse effect on any or all union members. We hold that the conduct of defendant union in this case is encompassed by the foregoing prohibitions.

Testimony before the hearing referee indicated that the local union determined that plaintiffs' grievances had merit and processed them through the first three steps of the collectively bargained grievance procedure. The local claimed to have then forwarded the grievances to the district council for further processing through the grievance mechanism. However, although it was the district's practice to process all step-three grievances

---

[12] This case is governed by PERA, not the NLRA.

to step four, plaintiffs' grievances were not timely processed to step four. The district could offer no reason for that failure, other than to claim that it never received the grievances from the local.

Although we agree with the maxim that a union's mere negligence does not constitute a breach of its duty of fair representation, the conduct in this case amounted to much more. Indeed, the Sixth Circuit would find that the negligence was not ordinary because there was no reliance on a past practice. *Ruzicka II; Ruzicka III.* Rather, the failure to process the grievances to step four was directly contrary to the union's past practice. Absent a reasoned, good-faith, nondiscriminatory decision not to process a grievance,[13] if elected union officials fail to comply with collectively bargained grievance procedure time limits, the union has acted arbitrarily and breached its duty of fair representation. Union officials should certainly be aware of grievance procedure time limits which are included in an agreement which the union collectively bargained for on behalf of its members. Their inexplicable failure to comply with those limits indicates inept conduct undertaken with little care or with indifference to the interests of those affected, an extreme recklessness or gross negligence which could reasonably have been expected to have had an adverse effect on the grievants.

We adopt the following comments of the federal district court in *Dutrisac, supra,* p 728, as they are a fitting conclusion to this analysis:

"The Court wishes to point to two very compelling reasons that conduct such as that found in the present

[13] For example, because the grievance has no merit, or, even if it has merit, because it is not in the best interests of the majority of the union membership.

case should not constitute only 'mere' negligence. First, the collective bargaining agreement provides that only the union can file for arbitration on behalf of the employee with the employer; the employee himself cannot file. This is a common provision in collective bargaining agreements. This provision, negotiated and entered into by the union and the employer, places an imposing duty upon the union to file notices of arbitration without mistake. With such a weighty duty, lesser conduct than is required in other circumstances can constitute arbitrary conduct violating the duty of fair representation owed to the employee-union member.

"Second, there is a severe loss to the employee where the union fails to observe a time limit such as the one in the present case. A terminated employee is prevented from pressing his grievance against the employer where the union has missed a time limit that must be complied with to invoke a stage of the mandatory grievance process. Thus, the employee is left with no recourse against the employer unless he can prove in court that the union violated its duty of fair representation. The severe loss to the employee of improper termination coupled with an inability to invoke a review of the employer's decision imposes a weighty burden on the union not to make mistakes in the handling of the employee's grievance. Again, lesser conduct can constitute arbitrary conduct and a breach of the duty of fair representation, because the duty of the union is great. If unions are allowed to escape breaches of the duty of fair representation by claiming that they only negligently missed time limits that precluded review of the employee's termination, employees will never be able to pursue their claims of improper termination. This is a loss to the employee that this Court cannot tolerate."

## IV

In conclusion, we hold that: (1) PERA impliedly imposes on labor organizations representing public sector employees a duty of fair representation; (2) bad-faith conduct is not always required to make

out a breach of that duty; (3) the conduct prohibited by the duty of fair representation includes (a) impulsive, irrational or unreasoned conduct, (b) inept conduct undertaken with little care or with indifference to the interests of those affected, (c) the failure to exercise discretion, and (d) extreme recklessness or gross negligence; (4) absent a reasoned, good-faith, nondiscriminatory decision not to process a grievance, the failure of a labor organization to comply with collectively bargained grievance procedure time limits constitutes a breach of the duty of fair representation; and (5) in this case, the union's inexplicable failure to comply with the grievance procedure time limits indicates inept conduct undertaken with little care or with indifference to the interests of plaintiffs, which could have reasonably been expected to foreclose plaintiffs from pursuing their grievance further. As a result, the union breached its duty of fair representation to plaintiffs.

The judgments of the Court of Appeals and of the MERC are reversed, and this case is remanded to the MERC for a determination of the relief due plaintiffs.[14]

WILLIAMS, C.J., and KAVANAGH, RYAN, and BRICKLEY, JJ., concurred with CAVANAGH, J.

LEVIN, J. (concurring). I agree with the majority's conclusion that a union's unexplained failure to process a member's grievance within the procedurally prescribed time limits constitutes a breach of the union's duty of fair representation. I write separately because I do not agree that to consti-

---

[14] We have held that sufficient evidence was introduced at the hearing for plaintiffs to prevail on the merits. Nevertheless, the MERC must determine whether the city's actions regarding plaintiffs were proper and what, if any, relief is due plaintiffs. See *Dutrisac, supra,* pp 721, 728-729.

tute a breach of the duty of fair representation a union's acts or omissions in the course of processing a grievance must be more egregious than mere negligence.

The union's unexplained failure to process the grievance in the instant case was at least negligent.[1] In *Vaca v Sipes*, 386 US 171, 185; 87 S Ct 903; 17 L Ed 2d 842 (1967), the United States Supreme Court said that where the union "has sole power under the contract to invoke the higher stages of the grievance procedure" a member may commence an action on the basis of the union's "*wrongful* refusal to process the grievance." (Emphasis in the original.) Wrongfulness was indeed said to include conduct that was "arbitrary,[2] discriminatory, or in bad faith." *Id.,* p 190. The Court also said, however, that wrongfulness might include ignoring a meritorious grievance or processing it in a perfunctory manner. *Id.,* pp 191, 194.

The duty of fair representation is rooted in the concept that a union owes a fiduciary duty to its members.[3] The right to fair representation can be traced to *Steele v Louisville & Nashville R Co*, 323 US 192; 65 S Ct 226; 89 L Ed 173 (1944), and *Tunstall v Brotherhood of Locomotive Firemen &*

---

[1] The hearing referee found that the reason for the failure to process the grievance was "a matter of conjecture". The Michigan Employment Relations Commission characterized the union's conduct as "apparent negligence".

[2] There is some authority for the view that there is no distinction between "arbitrary" union action—which clearly violates the duty of fair representation—and "negligent" union action in the processing of employee grievances. See *Ruzicka v General Motors Corp*, 523 F2d 306, 310 (CA 6, 1975), reh den 528 F2d 912 (CA 6, 1975) (*Ruzicka I*); see also Gorman, Labor Law, ch 30, § 7, p 720. For the reasons stated in this opinion, I am of the view that negligent acts or omissions may violate the duty of fair representation although not properly characterized as "arbitrary". See *Ruzicka I*, pp 315-316 (McCree, J., *concurring*).

[3] See Summers, *The Individual Employee's Rights Under the Collective Agreement: What Constitutes Fair Representation?*, 126 U Pa L Rev 251, 253, 276 (1977).

*Enginemen,* 323 US 210; 65 S Ct 235; 89 L Ed 187 (1944). In *Steele,* the Court said that "[i]t is a principle of general application that the exercise of a granted power to act in behalf of others involves the assumption toward them of a duty to exercise the power in their interest and behalf * * *." 323 US 202.

As a fiduciary, the union is required to exercise at least reasonable care in discharging the obligations it owes its members. The precise obligation owed to an individual member varies with the union activity involved. In contract negotiation, the union has a large measure of discretion to act for the common benefit of the entire membership. Less discretion is allowed in the administration of the contract; after the contract has been made, the duty of fair representation includes the responsibility of advancing and protecting the rights of individual members.[4]

Where the union is the exclusive agent of the member in a grievance proceeding, a failure on the part of the union to process a grievance will generally bar the member from enforcing his rights under the collective-bargaining agreement. As an exclusive agent, the union owes a fiduciary duty to its members. As a fiduciary, the union is required to exercise reasonable care in the processing of a member's grievance. An unexplained failure to process a grievance indicates a failure to exercise reasonable care. On that basis, I agree that the judgment of the Court of Appeals should be reversed.

BOYLE, J. I concur solely on the ground that a union's totally unexplained failure to process a grievance constitutes arbitrary union conduct, and thus a breach of the union's duty of fair representa-

[4] See Summers, *supra,* fn 3, p 257.

tion, irrespective of whether the union's conduct was in bad faith. I write separately to make clear my view that a breach of a union's duty of fair representation can only be shown by conduct that is "arbitrary, discriminatory, or in bad faith," *Vaca v Sipes,* 386 US 171, 190; 87 S Ct 903; 17 L Ed 2d 842 (1967).