# Order

Michigan Supreme Court
Lansing, Michigan

November 19, 2010

140841

In re CW, BW, and DW, Minors.

_____/

CW, BW, and DW,
          Appellees,

and

VALERIU MARTIN and KAREN MARTIN,
          Petitioners-Appellants,

v

DEPARTMENT OF HUMAN SERVICES,
          Respondent-Appellee.

_____/

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway
Alton Thomas Davis,
Justices

SC: 140841
COA: 292866
Genesee CC Family Division:
09-016660-AM

On October 7, 2010, the Court heard oral argument on the application for leave to appeal the February 16, 2010 judgment of the Court of Appeals. On order of the Court, the application is again considered and, pursuant to MCR 7.302(H)(1), in lieu of granting leave to appeal, we REVERSE the judgment of the Court of Appeals, for the reasons stated in the Court of Appeals dissenting opinion, we VACATE the June 8, 2009 order of the Genesee Circuit Court, Family Division, and we REMAND this case to the circuit court for further proceedings. On remand, the circuit court shall allow the petitioners to present relevant evidence in support of their claim that the Michigan Children's Institute Superintendent's decision to withhold consent to adopt the minor children was arbitrary and capricious. MCL 710.45(2). After admitting and considering this evidence, the circuit court shall determine whether the petitioners have established by clear and convincing evidence that the Superintendent's decision was arbitrary and capricious. MCL 710.45(7). The circuit court shall expedite consideration of this matter, and shall issue an opinion to be filed with the Clerk of this Court within 56 days of the date of this order.

We retain jurisdiction.

CORRIGAN, J. (*concurring*).

The petitioners in this adoption case, Valeriu and Karen Martin, voluntarily raised the three subject children—two of them from birth—until the children were removed from the Martins' home for reasons that a Department of Human Services (DHS) hearing officer later found baseless. The Michigan Children's Institute (MCI) Superintendent subsequently granted consent for a foster family, the Rabers, to adopt the children in part because the children had bonded with the Rabers after they were wrongfully removed from the Martins' home. In making this decision, the Superintendent merely exchanged an email with the children's Lawyer Guardian Ad Litem (LGAL), who had requested a meeting with him to explain why she believed the children's best interests would be served by adoption by the Martins. Moreover, at least one of the Superintendent's reasons for denying the Martins' request for consent to adopt was inaccurate; and some reasons weighing against his decision in favor of the Rabers' request were not investigated. As Judge SHAPIRO correctly recognized in his opinion dissenting from the Court of Appeals majority decision, in reviewing the Superintendent's decision under MCL 710.45, the trial court incorrectly concluded that it was essentially powerless to consider the accuracy of information relied on by the Superintendent or the nature of facts he failed to consider. On the basis of this erroneous conclusion, the trial court improperly declined to hear the Martins' proffered testimony in their favor from social workers and others familiar with the children.

## FACTS AND PROCEEDINGS

The Martins raised the three subject brothers, CW (DOB 11/16/01), BW (DOB 3/2/2004) and DW (DOB 11/11/2005), along with their older sister, AW (DOB 4/9/93), because the children's mother, a drug and alcohol user, could not care for them. After the parental rights of the children's parents were terminated, the Martins began the process to adopt them.

But on April 23, 2007, before completion of the adoption, Child Protective Services (CPS) received a complaint alleging that Karen Worden, a developmentally disabled adult who lived with the Martins, had been outside the home "screaming" at and spanking DW, who apparently was trying to crawl out of his stroller near the street. At a May 24, 2007 meeting in which the Martins participated, DHS staff stated that the complaint would not be substantiated. The Martins were thus authorized to complete the adoption process. Nonetheless, shortly after, at a June 13, 2007 internal meeting, Ingham County DHS Director Susan Hall ordered all four children removed from the Martins' home. The children were placed in foster care with the Rabers. AW, who is now 17 and whose adoption is not at issue, consistently ran away from the Rabers and back to the Martins. She was placed back with the Martins.

Worden moved out of petitioners' house on June 21, 2007. The Martins appealed the removal of the children to the Foster Care Review Board (FCRB), but the FCRB dismissed the appeal because the DHS had placed the Martins on the Child Abuse and

Neglect Central Registry as a result of the incident involving Worden. The Registry listing precluded the children from being returned to the Martins and also rendered them ineligible to adopt.

The Martins immediately requested a DHS hearing to contest the Registry listing. Their repeated requests apparently went unheeded for at least a month. Finally, DHS administrative proceedings commenced before a hearing officer, culminating in a final hearing that took place on September 29, 2008, over one year after the children had been removed from the Martins' home. In a November 5, 2008 decision, the hearing officer expunged the Martins' names from the Registry after ruling that the DHS had not proved that they or Worden had abused or neglected any of the children. The hearing officer observed that the sole basis for the Registry listing was the Martins' alleged failure to protect the children from Worden, yet DW had not been injured during the April 2007 incident and, although there were prior CPS complaints against Worden, none had ever been substantiated. The hearing officer further stressed that, after the CPS complaint was brought to the Martins' attention, they agreed to refrain from permitting Worden to supervise the children and "no evidence was presented to show that the Martins had failed to follow through on the agreement." The hearing officer added that "everyone who was involved with the family noted the bonding that the Martins had with the children, and none of the mandated reporters [including doctors and therapists] expressed any concern about the care the children were receiving."

In light of the hearing officer's favorable ruling, the children's LGAL requested placement of the boys back with petitioners for purposes of adoption. But the boys remained with the Rabers and the MCI Superintendent had already granted consent for the Rabers to adopt them. The Superintendent then rescinded his decision in favor of the Rabers in order to allow both families to seek adoption. But, after an investigation of the Martins, he denied the Martins' request and again granted the Rabers' request.

In a 2½-page decision, the Superintendent concluded that, although removal of the children from the Martins might have been in error, it was not in the children's best interests to be removed from the Rabers' home where they had lived and formed stable connections since June 2007. He cited factors including that the Rabers were able to meet the children's special needs whereas the Martins' "ability to meet the developmental needs of these children was inadequate." He also opined that the Martins "failed to recognize the risk to the children of being cared for by Ms. Worden" and had regularly allowed Worden to watch the children—while being untruthful to DHS workers about it—although the DHS had instructed them not to do so. Further, the Martins failed to fully cooperate with the DHS; they were often hostile and failed to provide information necessary to move forward with the adoption. Finally, because the children had been placed with the Martins as fictive kin, the Martins were never licensed as a foster home and further delay for licensing was contrary to the children's need for permanency.

Petitioners moved for court review of the Superintendent's decision under MCL 710.45, arguing that his decision was based on inaccurate and incomplete information and alleging that he had blindly deferred to the recommendations of local DHS officials. The Superintendent testified that he had reviewed records and had spoken to certain DHS staff, including the workers assigned to oversee the children while placed with the Rabers, and the supervisor who had opposed expungement of the Martins' names from the Registry before the hearing officer. He also spoke to the children's former LGAL. He had found it unnecessary to speak with the Martins or with AW, with whom the boys were bonded, in making his decision. He also had not spoken to doctors or therapists—nor had he reviewed medical records—from the time when the Martins cared for the children. It appears that, although he did not speak to the current LGAL or permit her to attend DHS meetings, he received her recommendation in favor of petitioners.

The Martins made an offer of proof outlining additional testimony that the Superintendent ignored significant evidence in their favor as well as evidence refuting his positive findings about the Rabers. For example, AW would testify that the Rabers both worked full time and "provided minimal care to the younger children," that her brothers appeared to deteriorate physically and mentally after placement with the Rabers, and that the Rabers were antagonistic toward AW having contact with her brothers. The Martins also offered the testimony of a DHS foster care worker who would address "the ongoing educational, behavioral, and sociological issues experienced by the [children] since being removed from the Martin home." A DHS caseworker assigned to the children when they lived with the Martins would further testify that the Superintendent's facts and conclusions concerning the Martins' care of the children were "flat-out wrong, incorrect, and baseless." She would opine that the Martins "did a fine job of meeting the special needs of the . . . children and that Karen Martin had dedicated herself to doing so on a nearly fulltime basis." Health care providers would testify that petitioners provided "exemplary care" and, when the children were placed with them, the children suffered from "none of the educational or psychological conditions which require strong psychotropic medications currently being provided . . . while in the Rabers' care." An MCI consultant would testify that reports prepared for the Superintendent included "patently false and incorrect" information concerning CPS complaints and care of the children by petitioners. Finally, the Martins offered other testimony negatively characterizing the Rabers' qualifications as caregivers for the three special needs children.

The judge refused to admit the proffered evidence and dismissed the Martins' petition for review. Although the judge was sympathetic to the Martins' plight and stated that the events of the case "made [her] sick," she opined that the proffered evidence was irrelevant because the court could not consider whether the Superintendent's decision was right or wrong, or even whether it was based on "bad" information given to him. Rather, the court could only consider whether the decision seemed "reasoned."

The Martins appealed in the Court of Appeals. A majority affirmed over Judge SHAPIRO's dissent. The majority expressed some concern about the Superintendent's "limited" investigation of the Martins' abilities to meet the children's developmental needs. *In re CW, BW and DW, Minors,* unpublished opinion per curiam of the Court of Appeals, issued February 16, 2010 (Docket No. 292866), at 3. But the majority opined that the Martins' offer of proof with regard to this issue "was insufficient for the trial court to have concluded that there were no good reasons for [the Superintendent] to have withheld consent." *Id.* at 4.

Judge SHAPIRO disagreed, stressing that the court's duty required it to evaluate whether the Superintendent's articulated reasons were made with consideration for the children's individual circumstances and thus whether his reasons were valid in light of the facts of the case. Judge SHAPIRO further concluded that the excluded evidence *could* have changed the outcome. In particular, evidence of the Martins' ability to meet the children's needs and of the children's alleged decline since placement with the Rabers was directly relevant to whether the Superintendent's decision was well reasoned. The Martins' evidence might also refute the Superintendent's assumption that petitioners continued (or would continue) to permit Worden to have contact with the children. The Superintendent's focus on the children's current bond with the Rabers, moreover, was at odds with their current LGAL's conclusion that adoption by the Martins was in their best interests and with the fact that adoption by the Rabers meant splitting them permanently from AW.

Finally, Judge SHAPIRO opined that the Superintendent "glosse[d] over" the "crux of the issue in this case," which was the erroneous Registry listing and the Martins' successful efforts to have their names expunged. He asserted that the Martins, "having done nothing wrong and doing everything within their power to fix an error that was not theirs, find themselves not only without custody of the three children they have raised since the children were two years old or younger, but also without recourse." Accordingly, "[a]t the very least," they should have been permitted to present all their evidence. *In re CW, supra,* SHAPIRO, J., dissenting, at 4.

## DISCUSSION

The MCI Superintendent "has the power to make decisions on behalf of" children who are wards of the state, MCL 400.203(2), including the authority to consent to adoption. MCL 400.209(1). If the superintendent denies a petitioner's request for consent to adopt, the petitioner may file a motion with the court alleging that the superintendent's decision was arbitrary and capricious. MCL 710.45(2). The court must determine whether the petitioner has shown by clear and convincing evidence that the decision was arbitrary and capricious. MCL 710.45(7) & (8); *In re Cotton,* 208 Mich App 180, 185-187 (1994). This Court has stated on the basis of United States Supreme Court jurisprudence:

> "Arbitrary is: ' "[W]ithout adequate determining principle * * * Fixed or arrived at through an exercise of will or by caprice, without consideration or adjustment with reference to principles, circumstances, or significance, * * * decisive but unreasoned." '

> "Capricious is: ' "[A]pt to change suddenly; freakish; whimsical; humorsome." ' [*Goolsby v Detroit*, 419 Mich 651, 678 (1984) (citations omitted.]

"Capricious" also means being "subject to, led by, or indicative of caprice or whim." "Caprice," in turn, may refer to "a tendency to change one's mind without apparent or adequate motive." Random House Webster's College Dictionary (2nd ed). This Court has further acknowledged that bad faith is not a necessary element of arbitrary conduct. Rather, under some circumstances, arbitrariness may be evident in proof that an act was undertaken "'in a perfunctory fashion'" or on the basis of ignorance of facts directly bearing on the matter. *Goolsby,* 419 Mich at 669, quoting *Milstead v International Brotherhood of Teamsters, Local Union No 957,* 580 F2d 232, 235 (CA 6, 1978).

The lower courts relied on the Court of Appeals opinion in *In re Cotton,* 208 Mich App 180, to conclude, in the words of the trial judge, that a petitioner's burden under MCL 750.45 is "almost impossible." The Court of Appeals opined that the evidence proffered by the Martins was essentially irrelevant because it "was insufficient for the trial court to have concluded that there were no good reasons for [the Superintendent] to have withheld consent." *In re CW, supra* at 4. To support this conclusion, the Court of Appeals cited *In re Cotton,* 208 Mich App at 185, for the proposition that "it is the absence of any good reason to withhold consent, not the presence of good reasons to grant it, that indicates that the representative was acting in an arbitrary and capricious manner."

But the tribunals misinterpreted *In re Cotton* in this regard, thus effectively rendering their review under MCL 750.45 meaningless. The oft-cited portion of *In re Cotton* was primarily aimed at refuting the narrow question posed in that case: whether the Legislature intended for a reviewing court to decide adoption issues *de novo* "and substitute its judgment for that of the representative of the agency that must consent to the adoption." *Id.,* 208 Mich App at 184. *In re Cotton* did not establish, as the lower courts appear to conclude, that the Superintendent's decision must be affirmed as long as it appears facially reasoned, without regard to the accuracy of the facts or the thoroughness of the investigation, as long as a single "good" reason supports the decision. To the contrary, as *In re Cotton* explicitly suggested, a reviewing court may address whether the bases for his decision are "without factual support." *Id.* at 186.

The Court of Appeals further illustrated this concept in *In re Keast,* 278 Mich App 415, (2008), in which the petitioner argued that the Superintendent's decision denying consent was based on "selected and edited reports" and the bias of a DHS worker. *Id.* at 422, 433. The trial court in *Keast* took testimony and carefully reviewed the factual bases for the Superintendent's reasoning in resolving this claim and, in turn, the appellate panel reviewed the record in detail to conclude that no facts supported the allegation that DHS staff were biased. *Id.* at 433, 434. The panel also reviewed the record in detail before concluding that the Superintendent's reasons were supported by facts in the record. *Id.* at 430. The panel ultimately ruled that the Superintendent's decision "was supported by the documentation provided to him as well as by his independent investigation and it was not arbitrary or capricious." *Id.* at 435.

Many other Court of Appeals panels have similarly concluded that the accuracy and completeness of facts underlying a Superintendent's decision are necessary for court review under MCL 750.145. Most notable in this regard is *In re CLH,* unpublished opinion per curiam of the Court of Appeals, issued June 3, 2003 (Docket No. 244877), quoted by Judge SHAPIRO. The panel in *In re CLH* observed that reviewing a decision for whether it was arbitrary and capricious requires considering whether the articulated reason for denying consent "was made without consideration of the child's individual circumstances" and this "entails examination of whether [the] reason was invalid in light of the evidence." *Id.* at 3. "Otherwise," said the panel, "review of an agency representative's decision under MCL 710.45(5) would amount to nothing more than a rubber stamp of whatever reason the representative articulated, and the statutory review procedure would be illusory." *Id.* Compare *In re Greenwood,* unpublished opinion per curiam of the Court of Appeals, issued August 26, 2008 (Docket No. 277366), at 4 ("[W]hether the superintendent had before him a complete evaluation of the circumstances of the children, in advance of his adoption decision," is relevant to whether his reasons for denying consent "were valid in light of the specific circumstances of the children" and thus to whether his decision was arbitrary and capricious.); *In re Eckles,* unpublished opinion per curiam of the Court of Appeals, issued September 24, 2004 (Docket No. 252893), at 7 (The trial court properly rejected the Superintendent's decision denying consent where his reason was factually unfounded.).

The lower courts here wrongly concluded that the accuracy and completeness of the facts underlying the Superintendent's decision were irrelevant to review of his decision. And the Martins' proffered evidence directly refuted the facts underlying the Superintendent's reasons for denying consent and supported an argument that his investigation of the Martins was perfunctory.[1] Most notably, even the existing record

---

[1] On this point, I acknowledge that the Superintendent bears a heavy investigative burden; he testified that he is required to grant or deny requests for consent to adopt in 250 to 275 contested cases every year. When making his decisions, the Superintendent certainly may rely in part on DHS reports which he reasonably believes to be accurate.

clearly confirms that the Superintendent had no factual basis for his conclusion that the Martins' "ability to meet the developmental needs of these children was inadequate." Rather, the record showed that the Martins had successfully cared for the children—each of whom had special needs and required weekly doctor and therapist appointments—when the children lived with them. The Martins' offer of proof also suggests that the children had no need of psychotropic medications while under the Martins' care. Further, the Superintendent's failure to speak to doctors, teachers, the Martins or AW about the boys' alleged deterioration since their placement with the Rabers undermines his conclusion that the children's interests were comparatively better served by placement with the Rabers. It is also notable that the Superintendent appears not to have meaningfully consulted with the children's current LGAL, who strongly supported placement with the Martins and offered her input to the Superintendent. MCL 400.204(2) expressly provides that the LGAL and the Superintendent "shall consult with each other" if the LGAL "has an objection or concern" with regard to the child's placement or permanency planning.

Because the lower courts misunderstood their review function—and because the Martins' offer of proof was directly relevant to whether the Superintendent's decision was arbitrary and capricious as a result of a perfunctory investigation or based on factually unsupported reasons—I concur in the order remanding for the trial court to revisit its decision after considering the Martins' proffered evidence.

KELLY, C.J., joins the statement of CORRIGAN, J.

YOUNG, J. (*dissenting*).

I dissent from the Court's order reversing the decisions of the lower courts. The Michigan Children's Institute Superintendent's decision to withhold consent to adopt was not arbitrary and capricious. Therefore, there is no need to remand for an evidentiary hearing. The Superintendent provided valid justifications for withholding consent; specifically, that the children's best interests were served by keeping them in the home of the family with whom they developed close psychological bonds and a stable familial relationship. The relevant statute, MCL 710.45, requires nothing more. I would deny leave to appeal.

The children in this case lived with the Martin family from a very young age until June, 2007. At that time, the Ingham County Department of Human Services removed the children from the Martins' care and placed them with the Raber family. Although it was later determined that the basis for removing the children was incorrect, the children remained with the Rabers. In early 2009, the Superintendent withheld consent from the

But mere uncritical reliance on DHS reports does not fulfill his statutory duty to make these decisions as the guardian of wards of the state. MCL 400.203(1).

Martins to adopt the children and instead granted consent to the Rabers, with whom the children continue to reside. Among other reasons given, the Superintendent withheld consent from the Martins because the Martins were not licensed to operate a foster home nor were they approved as an adoptive home, the children had established close psychological bonds to the Rabers, and the children had formed a stable familial relationship with the Rabers.

Parties who wish to challenge the Superintendent's decision to withhold consent to adopt may do so by bringing a motion before the trial court. A petitioner bringing such a motion bears a heavy burden. The motion must include the specific reasons why the Superintendent's decision was arbitrary and capricious,[2] and, unless the evidence is clear and convincing, the court "*shall* deny" the challenger's motion.[3]

A decision is arbitrary if it is made "[w]ithout adequate determining principle . . . Fixed or arrived at through an exercise of will or by caprice, without consideration or adjustment with reference to principles, circumstances, or significance, . . . decisive but unreasoned."[4] Capricious decisions are "[a]pt to change suddenly; freakish; whimsical; humorsome."[5] Reviewing courts do not determine whether the Superintendent's decision to withhold consent was correct.[6] Rather, the inquiry is limited to whether the Superintendent acted arbitrarily and capriciously in deciding to withhold consent.[7] As a result, judicial review of the Superintendent's decision is highly deferential. Not only must a challenging party demonstrate that the decision was arbitrary and capricious, they must do so by clear and convincing evidence.[8]

The evidence adduced at the trial court demonstrates that the Superintendent's decision was supported by valid justifications that considered the individual circumstances of the children. At the time the Superintendent made his decision, the children, all under age ten, had been living with the Rabers for nearly two years,

---

[2] MCL 710.45(2).

[3] MCL 710.45(7) (emphasis added).

[4] *Goolsby v City of Detroit*, 419 Mich 651, 678 (1984) (quotation marks and citation omitted).

[5] *Id*. (quotation marks and citation omitted).

[6] *In re Cotton*, 208 Mich App 180, 184 (1994).

[7] *Id*.

[8] MCL 710.45(7).

and had "formed a stable relationship," and established "close psychological connections" with the Rabers. The Superintendent also noted that the Martins did not have a license to operate a foster home and the licensing process would delay permanency for the children. The Superintendent's decision to withhold consent to adopt was premised upon the children's psychological well-being and stability. Rather than remove these young children from their home and family a second time in as many years, the Superintendent reasonably determined that it was in the children's best interest to remain with their current family. That justification is even more compelling today, as these young children have now lived in the same stable, loving home for the past three and a half years.

As the Court of Appeals observed in *In re Cotton*, "it is the absence of any good reason to withhold consent, not the presence of good reasons to grant it, that indicates that the [Superintendent] was acting in an arbitrary and capricious manner."[9] Far from an unreasoned decision reached without reference to circumstance or taken in a whimsical manner, the Superintendent considered the emotional and psychological well-being of the children in withholding consent from the Martins. Granting consent to the Rabers to adopt the children prevented the psychological trauma of changing families once again.

Because the Superintendent's decision was not arbitrary and capricious, remanding for an evidentiary hearing is unnecessary and only delays permanency for children who have spent their *entire lives* in foster care. That the children have lived in a loving, stable home with a family that attends to their needs and with whom the children have established close emotional bonds will remain unchanged after an evidentiary hearing. The ongoing need for stability will likewise remain the same for these young children. The lower courts properly held that the Martins failed to satisfy their evidentiary burden. Because the majority gives short shrift to the scope of review, and delays permanency for these young children, I dissent.

MARKMAN, J. (*dissenting*).

Although I have no doubt that the Martins could provide a loving and stable home for these children, and am cognizant that the original basis for DHS removing these children from the Martins' care was in error, I nonetheless agree with the analysis set forth by Justice YOUNG, and therefore join his dissenting statement.

---

[9] *In re* Cotton, 208 Mich App at 185.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

November 19, 2010

d1116

Clerk