# STATE OF MICHIGAN

# COURT OF APPEALS

AFSCME COUNCIL 25, LOCAL 1583

    Respondent-Appellee,

v

JAMES YUNKMAN, GLEN FORD, and FRED ZELANKA,

    Charging Parties-Appellants.

UNPUBLISHED
May 26, 2015

Nos. 320626; 320655; 320658
MERC
LC Nos. 10-000032;10-000033;
    10-000034

AFSCME COUNCIL 25, LOCAL 1583,

    Respondent-Appellee,

v

FRED ZELANKA, GLEN FORD, and JAMES YUNKMAN,

    Charging Parties-Appellants.

Nos. 324291; 324323; 324350
MERC
LC Nos. 13-000011; 13-000012;
    13-000013

Before: MURPHY, P.J., and STEPHENS and GADOLA, JJ.

PER CURIAM.

In these consolidated appeals, the charging parties appeal two rulings of the Michigan Employment Relations Commission (MERC).[1] With respect to Docket Nos. 320626, 320655, and 320658, the charging parties, employees of the University of Michigan, were expelled from respondent union for activities that assisted or were intended to assist a competing organization within respondent union's jurisdiction. The MERC upheld respondent union's actions in expelling the charging parties and dismissed the charging parties' challenge. The MERC

---

[1] The MERC was "created within the department of labor" under the authority of MCL 423.3, which is part of Michigan's labor mediation act, MCL 423.1 *et seq.*

-1-

concluded that the case involved an internal union matter that did not affect the charging parties' relationship with their employer, thereby falling outside the scope of the governing public employment relations act (PERA), MCL 423.201 *et seq*. The charging parties now appeal that ruling to us. Subsequently, with respect to Docket Nos. 324291, 324323, and 324350, respondent union precluded the charging parties from participating in a contract ratification vote, given their expulsion from respondent union. The MERC upheld respondent union's decision and dismissed the charging parties' challenge, concluding that a union does not violate the PERA by preventing nonmembers from voting on a union-negotiated employment contract. The charging parties now appeal that ruling to us. We affirm the two rulings of the MERC.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. THE FIRST MERC CASE

The three charging parties were members of respondent union when they engaged in circulating a decertification petition in an effort to have a vote on the removal of respondent union as the collective bargaining representative for certain employees of the University of Michigan. Respondent union – Local 1583 of AFSCME, AFL-CIO – is affiliated with Michigan Council 25 of AFSCME, AFL-CIO, which is chartered by and affiliated with AFSCME, AFL-CIO. Respondent union charged the charging parties with violation of Section 2.E. of Article X of the AFSCME International Constitution (AIC), which authorizes charges when a union member engages in "[a]ny activity which assists or is intended to assist a competing organization within the jurisdiction of the union."[2] With respect to the penalty for such a charge, AIC, art X, § 15, provides that a union member may be suspended or expelled from union membership for a violation. Trials were conducted by a "trial body" within respondent union, which found that the charging parties had violated AIC, art X, § 2.E. The trial body imposed a two-year suspension from union membership in regard to all three charging parties. Thereafter, an AFSCME judicial panel assumed appellate jurisdiction over the three cases, found the charging parties guilty of violating AIC, art X, § 2.E., and fully expelled them from membership in the AFSCME.

The three charging parties proceeded to file separate but identical charges against respondent union with the MERC, alleging unfair labor practices. The charging parties claimed that AIC, art X, § 2.E., violated the PERA, in that it prevented them and co-employees from freely choosing or displacing their bargaining representative. The cases were assigned to an administrative law judge (ALJ). After various proceedings before the ALJ, the ALJ issued a decision and recommended order summarily dismissing the charges for failure to state a claim of unfair labor practices under the PERA. The ALJ essentially found that the expulsions involved an internal union matter and did not have any impact on the charging parties' employment relationship with their employer. The charging parties filed exceptions to the order with the three-member MERC panel, raising some of the same arguments as those made to the ALJ, but also adding a variety of new arguments under the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*., the Labor-Management Reporting and Disclosure Act (LMRDA), 29 USC

---

[2] Respondent union's constitution incorporates by reference the provisions found in the AIC.

401 *et seq.*, and the National Labor Relations Act (NLRA), 29 USC 151 *et seq.* The MERC, addressing all of the claims, issued a decision and order in which it ruled:

Charging Parties take issue with the ALJ's finding that Respondent did not violate PERA when it expelled them from the Union. However, union members may be suspended or expelled from the union, prohibited from attending union meetings or voting in internal union elections, and otherwise be restricted by the union so long as the union's actions do not have a direct effect on the union members' terms and conditions of employment. We have not considered such conduct to be an unfair labor practice.

We have previously dismissed a charge involving the application of the same or substantially similar language in the AFSCME by-laws. . . .

Similarly, the ALJ here found that Charging Parties did not allege facts to support the allegation that Respondent engaged in conduct which had an impact on the employment relationship. Charging Parties remain employed by the University of Michigan and there have been no allegations that Charging Parties were ever threatened with discipline by the employer as a result of their expulsion from the Union. We, thus, agree with the ALJ that Charging Parties failed to set forth any facts which would establish that Respondent acted arbitrarily, discriminatorily or in bad faith, and further agree that these cases involve internal union matters which are outside the scope of PERA. The ALJ was correct in finding that Charging Parties failed to state a claim upon which relief can be granted.

Charging Parties also assert that we should enforce the provisions of the [LMRDA] . . . because MERC "follows the rulings of the NLRB [National Labor Relations Board]." This Commission lacks jurisdiction over the LMRDA. Charging Parties have thus failed to state a valid claim under a law within our jurisdiction and the LMRDA claim is accordingly subject to dismissal . . . . In addition, by invoking the LMRDA, Charging Parties are essentially asking us to decide whether Respondent unlawfully failed to disclose financial statements upon request. However, Charging Parties waived this issue at oral argument before the ALJ. They agreed with the ALJ that the only issue left to be decided was whether their expulsion from the union violated PERA.

Charging Parties' exceptions state that Respondent removed Charging Parties "from their books to block them from expressing their religious expressions of requesting the finance records and from obtaining copies of the finance books" and assert that by so doing Respondent violated the [ELCRA] . . . . However, the Commission does not have jurisdiction over claims brought under the [ELCRA] . . . . Since the religious practices claim does not state a valid claim under any law within our jurisdiction, it is subject to dismissal . . . . In addition, this argument was not raised in the charges or at the hearings on oral argument. A

party may not raise issues in exceptions that were neither stated in the charge nor raised at the hearing. [Citations omitted.]

The MERC affirmed the ALJ's recommended dismissal of the charging parties' claims that respondent union had engaged in unfair labor practices. The charging parties now appeal the MERC's ruling to us.

## B. THE SECOND MERC CASE

After the ALJ had issued his decision and recommended order, but before the MERC had ruled on the charging parties' exceptions and issued its opinion, respondent union conducted an employment-contract ratification election, and the charging parties were denied access to vote in the election because of their expulsion from union membership. The charging parties proceeded to file charges with the MERC against respondent union, claiming violation of the duty of fair representation. The case was assigned to a different ALJ than the one who had handled the expulsion case. Ultimately, the ALJ issued a decision and recommended order, concluding that the claims of the charging parties should be dismissed for failure to state a claim under the PERA, as there was no violation of the duty of fair representation when respondent union refused to allow the charging parties to vote in the ratification election.

The charging parties filed exceptions to the order with the three-member MERC panel. The MERC issued a decision and order in the case about eight months after it had issued its decision and order in the expulsion case. With respect to the charging parties' claims stemming from the denial to vote in the election, the MERC, relying on MERC precedent, stated that unions are not required to allow nonmembers to participate in contract ratification proceedings. The MERC noted that the PERA does not even mandate that a contract be submitted to union members for ratification before becoming effective. The MERC also concluded that it is irrelevant to the analysis whether a person had voluntarily relinquished union membership or whether, as in this case, the person was involuntarily expelled from union membership. The MERC ruled that respondent union did not violate the PERA by barring the charging parties from voting in the contract ratification election. The MERC affirmed the ALJ's recommended dismissal of the "unfair labor practices" charges. The charging parties now appeal the MERC's ruling to us.

## II. ANALYSIS

## A. STANDARDS OF REVIEW AND PRINCIPLES OF STATUTORY CONSTRUCTION

In discussing the applicable standards of review in the context of a MERC case, our Supreme Court in *Amalgamated Transit Union, Local 1564, AFL-CIO v Southeastern Mich Transp Auth*, 437 Mich 441, 450; 473 NW2d 249 (1991), observed:

Our review of the commission's decision is circumscribed by the statutory mandate that factual findings of the commission are conclusive if supported by competent, material, and substantial evidence on the record considered as a whole. MCL 423.216(e); Const 1963, art 6, § 28. Review of factual findings of

the commission must be undertaken with sensitivity, and due deference must be accorded to administrative expertise. Reviewing courts should not invade the exclusive fact-finding province of administrative agencies by displacing an agency's choice between two reasonably differing views of the evidence.

Legal rulings of administrative agencies are not given the deference accorded factual findings. Legal rulings of an administrative agency are set aside if they are in violation of the constitution or a statute, or affected by a substantial and material error of law. [Citations omitted.]

"Substantial evidence" is defined as "the amount of evidence that a reasonable mind would accept as sufficient to support a conclusion[,]" which evidence must be "more than a scintilla" but "may be substantially less than a preponderance." *In re Payne*, 444 Mich 679, 692; 514 NW2d 121 (1994) (citations omitted). An agency's action is not authorized by law if it "violate[s] a statute or constitution, exceed[s] the agency's statutory authority or jurisdiction, materially prejudice[s] a party as the result of unlawful procedures, or [is] arbitrary and capricious." *Natural Resources Defense Council v Dep't of Environmental Quality*, 300 Mich App 79, 87-88; 832 NW2d 288 (2013). Statutory interpretation and the determination of the extent of an agency's jurisdiction are legal questions subject to de novo review by this Court. *Macomb Co v AFSCME Council 25 Locals 411 and 893*, 494 Mich 65, 77; 833 NW2d 225 (2013); *Michigan's Adventure, Inc v Dalton Twp*, 287 Mich App 151, 153; 782 NW2d 806 (2010).

In *Whitman v City of Burton*, 493 Mich 303, 311-312; 831 NW2d 223 (2013), the Michigan Supreme Court recited the well-established principles governing statutory construction:

When interpreting a statute, we follow the established rules of statutory construction, the foremost of which is to discern and give effect to the intent of the Legislature. To do so, we begin by examining the most reliable evidence of that intent, the language of the statute itself. If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted. Effect should be given to every phrase, clause, and word in the statute and, whenever possible, no word should be treated as surplusage or rendered nugatory. Only when an ambiguity exists in the language of the statute is it proper for a court to go beyond the statutory text to ascertain legislative intent. [Citations omitted.]

"In accordance with separation of powers principles[,] . . . agency interpretations are entitled to respectful consideration, but they are not binding on courts and cannot conflict with the plain meaning of the statute." *In re Complaint of Rovas against SBC Mich*, 482 Mich 90, 117-118; 754 NW2d 259 (2008).

## B. DISCUSSION

### 1. THE FIRST MERC CASE

In *St Clair Intermediate Sch Dist v Intermediate Ass'n/Mich Ed Ass'n*, 458 Mich 540, 550; 581 NW2d 707 (1998), our Supreme Court indicated that the PERA governs labor relations in public employment, that it imposes a duty of collective bargaining on unions and public employers, and that violations of § 10 of the PERA, MCL 423.210, constitute unfair labor practices for purposes of § 16 of the PERA, MCL 423.216, which are remediable by the MERC. The Supreme Court has construed MCL 423.216 "as vesting the MERC with exclusive jurisdiction over unfair labor practices." *Id.*[3]

MCL 423.216 provides that a violation of a provision in MCL 423.210 shall be deemed an unfair labor practice remediable by the MERC. Under MCL 423.210(2)(a), a labor organization or its agents are precluded from restraining or coercing a public employee in the exercise of his or her rights under MCL 423.209.[4] Subsection (2)(a) of MCL 423.210 further provides that this subsection "does not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership."[5] As indicated, MCL 423.210(2)(a) protects a public employee in the exercise of rights set forth in MCL 423.209, and MCL 423.209 provides in relevant part:

> (1) Public employees may do any of the following:
>
> (a) Organize together or form, join, or assist in labor organizations; engage in lawful concerted activities for the purpose of collective negotiation or bargaining or other mutual aid and protection; or negotiate or bargain collectively with their public employers through representatives of their own free choice.

---

[3] The PERA is the "dominant law regulating public employee labor relations." *Rockwell v Crestwood Sch Dist Bd of Ed*, 393 Mich 616, 629; 227 NW2d 736 (1975). And the "MERC alone has jurisdiction and administrative expertise to entertain and reconcile competing allegations of unfair labor practices and misconduct under the PERA." *Id.* at 630.

[4] At the time of the events at issue, this same language was found in MCL 423.210(3)(a) and eventually became part of §§ (2)(a). See 1973 PA 25; 2012 PA 53; 2012 PA 349; and 2014 PA 414. For purposes of this opinion, we shall cite the current subsection wherein the language can be found.

[5] At the time of the events at issue, nearly identical language was found in MCL 423.210(3)(a) and later became part of §§ (2)(a); there is no substantive difference between the two versions. See 1973 PA 25; 2012 PA 53; 2012 PA 349; and 2014 PA 414. For purposes of this opinion, we shall cite the current subsection wherein the language can be found.

(b) Refrain from any or all of the activities identified in subdivision (a).[6]

As gleaned from above, determining the scope of the MERC's jurisdiction in a matter entails starting with MCL 423.216, followed by contemplation of MCL 423.210, which in turn, except when it comes to the right of a union to make its own membership rules, directs an examination and consideration of a public employee's rights enunciated in MCL 423.209. Here, given that MCL 423.210(2)(a) indisputably allows a union "to prescribe its own rules with respect to the acquisition or retention of membership," we reject all of the arguments posed by the charging parties regarding the soundness and validity of AIC, art X, §§ 2.E. and 15, which were relied on by respondent union in expelling the charging parties from membership.[7] Reading MCL 423.210 in conjunction with MCL 423.209, the bar against a labor organization coercing or restraining a public employee with respect to the employee's free choice in selecting a collective-bargaining representative and making organizing decisions is subject to the labor organization's right to prescribe rules concerning the acquisition or retention of membership.

---

[6] At the time of the events at issue, comparable language was found in MCL 423.209, which then provided in its entirety:

> It shall be lawful for public employees to organize together or to form, join or assist in labor organizations, to engage in lawful concerted activities for the purpose of collective negotiation or bargaining or other mutual aid and protection, or to negotiate or bargain collectively with their public employers through representatives of their own free choice. [See 1965 PA 379; 2012 PA 349; 2014 PA 414.]

2012 PA 349, which added numerous provisions to MCL 423.209, as well as reworking the section quoted in this footnote, is "colloquially called a 'right to work' law." *UAW v Green*, 302 Mich App 246, 249; 839 NW2d 1 (2013). The "right to work" law, 2012 PA 349, became effective March 28, 2013, long after the charging parties were expelled by respondent union but only three days after the contract vote on March 25, 2013, which the charging parties were prevented from participating in.

[7] We appreciate that there may be some outside limitations on a union's ability to prescribe membership rules regardless of MCL 423.210(2)(a), e.g., a union could not enact a rule requiring the expulsion of minorities, but none of the arguments posed by the charging parties rise to the level of undermining the validity of AIC, art X, §§ 2.E. and 15. To the extent that the charging parties make any kind of First Amendment argument, it is waived for failure to preserve the issue in the MERC. "No objection that has not been urged before the . . . [MERC], its commissioner or agent, shall be considered by the court [of appeals], unless the failure or neglect to urge the objection is excused because of extraordinary circumstances." MCL 423.216(d) and (e); see also *Detroit Police Officers Ass'n v Detroit*, 61 Mich App 487, 494 n 10; 233 NW2d 49 (1975) (Citing MCL 423.216[d] in support, this Court stated that an "issue, raised for the first time on appeal, will not be considered further."). There are no extraordinary circumstances here.

Thus, while it may be coercive and impact free choice when a labor organization employs a rule that suspends or expels members for assisting a competing labor organization, the rule pertains to maintaining membership in a union and is thus permissible.

Nevertheless, prescribing rules differs from *applying those rules to a set of circumstances*, and this observation leads us to a discussion of *Goolsby v Detroit*, 419 Mich 651; 358 NW2d 856 (1984), which is an opinion that must be considered when examining a union's treatment of a member and the MERC's jurisdiction. In *Goolsby*, a case involving a claim that the union failed to fully process member grievances against the city regarding newly-imposed employment physicals, our Supreme Court recognized a union's duty of fair representation:

> In conclusion, we hold that: (1) PERA impliedly imposes on labor organizations representing public sector employees a duty of fair representation; (2) bad-faith conduct is not always required to make out a breach of that duty; (3) the conduct prohibited by the duty of fair representation includes (a) impulsive, irrational or unreasoned conduct, (b) inept conduct undertaken with little care or with indifference to the interests of those affected, (c) the failure to exercise discretion, and (d) extreme recklessness or gross negligence; [and] (4) absent a reasoned, good-faith, nondiscriminatory decision not to process a grievance, the failure of a labor organization to comply with collectively bargained grievance procedure time limits constitutes a breach of the duty of fair representation[.] [*Goolsby*, 419 Mich at 681-682.]

The *Goolsby* Court adopted precedent from the United States Supreme Court, which indicated that the duty of fair representation was comprised of three general responsibilities: serving member's interests without hostility or discrimination; exercising discretion in good faith and honesty; and, avoiding arbitrary conduct. *Id.* at 664, quoting *Vaca v Sipes*, 386 US 171, 177; 87 S Ct 903; 17 L Ed 2d 842 (1967). Importantly, the Court also noted that "[i]n this state, a person claiming that a labor organization has breached its duty of fair representation can institute an administrative or a judicial proceeding, the former by filing an unfair labor practice charge with the NLRB or the MERC, the latter by filing a complaint with a federal district or state circuit court." *Goolsby*, 419 Mich at 665 n 6. And in *Demings v City of Ecorse*, 423 Mich 49, 53; 377 NW2d 275 (1985), the Supreme Court addressed the issue whether the MERC should have exclusive jurisdiction of fair-representation charges brought under the PERA, holding that "the circuit court has concurrent jurisdiction with the MERC" with respect to such claims. Accordingly, a charge that a labor organization breached the duty of fair representation generally falls within the scope of the MERC's jurisdiction, as well as the jurisdiction of a circuit court.

On appeal, the charging parties argue that they were improperly and arbitrarily expelled under AIC, art X, § 2.E., which, when read together with AIC, art X, § 15, allows a union to expel a union member when a member engages in "[a]ny activity which assists or is intended to assist a competing organization within the jurisdiction of the union." The charging parties maintain that there was no evidence whatsoever presented in the AFSCME proceedings regarding the charging parties' involvement with a "competing organization." The charging parties contend:

No other union was involved in the decertification process. If no [other] union was involved, and it was only the members of the existing union requesting to decertify from the main body, how can there be a competing organization or a competing union or assist[ance] [to] a competing union.

This argument pertains to the *application* of AIC, art X, § 2.E., not its enactment or existence. However, a close inspection of the record reveals that this precise argument was never made to the ALJ or the MERC. Below, the charging parties initially simply argued that AIC, art X, § 2.E., violated the PERA, which argument we have rejected. The charging parties later contended, in part, that respondent union breached the duty of fair representation by expelling them "without just reasoning" and that "[a]lthough the Union can prescribe its own rules pertaining to the acquisition or retention of membership, the AFSCME's actions in this situation were outside the bounds of their own bylaws." In his decision and recommended order, the ALJ stated that the sole issue in the case, as developed or refined at oral argument, involved whether respondent union acted unlawfully in expelling the charging parties and in otherwise punishing them for violating AIC, art X, § 2.E.[8] The ALJ then set forth the principles from *Goolsby* regarding the duty of fair representation. Citing a litany of MERC opinions, the ALJ concluded that respondent union's actions in expelling and punishing the charging parties for violating AIC, art X, § 2.E., did not breach the duty of fair representation, considering that the actions concerned an internal union matter that did not impact the terms and conditions of the charging parties' employment.[9] The ALJ indicated that "[i]nternal union matters are outside the scope of PERA" and "are left to the members themselves to regulate."

In the exceptions filed by the charging parties to the ALJ's decision and recommended order, they complained about alleged procedural failures in the trial and appellate processes within AFSCME itself, vaguely asserting that respondent union did not follow its own rules and

---

[8] At oral argument, the charging parties simply made broad and vague accusations that respondent union had failed to abide by the rules and procedures outlined in AIC, art X. They repeat those claims on appeal without providing specificity sufficient for us to properly entertain the claims, and we thus deem them waived. See *Mudge v Macomb Co*, 458 Mich 87, 105; 580 NW2d 845 (1998).

[9] The ALJ relied in part on *In re West Branch-Rose City Ed Ass'n*, MERC Decision and Order on Remand (Case No. CU98 J-50), issued May 25, 2004, p 4, wherein the MERC explained:

A union's duty of fair representation extends to union conduct in representing employees in their relationship with their employer, such as negotiating a collective bargaining agreement or resolving a grievance, and in related decision-making procedures. The duty does not apply to matters that are strictly internal union affairs, which do not impact the relationship of bargaining unit members to their employer. [Citations omitted.]

the AIC. As indicated earlier, the MERC rejected the arguments, ruling that "union members may be suspended or expelled from the union, prohibited from attending union meetings or voting in internal union elections, and otherwise be restricted by the union so long as the union's actions do not have a direct effect on the union members' terms and conditions of employment."[10]

We cannot locate in the record any argument by the charging parties where they expressly claimed that their expulsions were improper and arbitrary because there was no evidence regarding a "competing organization." Accordingly, the issue is unpreserved and there are no extraordinary circumstances dictating review of the issue. See MCL 423.216(d) and (e); *Detroit Police Officers Ass'n v Detroit*, 61 Mich App 487, 494 n 10; 233 NW2d 49 (1975). Further, there is perhaps an argument that decertification, in and of itself, will naturally inure to the benefit of some competing organization down the road, sufficing to establish a violation of AIC, art X, § 2.E., which may have been respondent union's interpretation of the provision. The charging parties do not engage in any meaningful discussion, application, or analysis of construction principles. While we might question the applicability of AIC, art X, § 2.E., to the facts in this case, we need not entertain the issue regarding the proper construction of AIC, art X, § 2.E., in light of the briefing and preservation failures.[11]

Additionally, even had the argument been preserved by the charging parties, it is clear that the MERC would have rejected the argument, given its stance that an unfair labor practice, such as breach of the duty of fair representation, must impact a union member's relationship with his or her employer or else be deemed an internal policy matter falling outside the scope of the PERA. We do note that the *Goolsby* Court, in discussing the duty of fair representation, did not directly speak to the question whether it is necessary to show that a union's breach of the duty impacted or affected the terms and conditions of employment. But we further note that *Goolsby* did involve union conduct that indeed affected the terms or conditions of employment, i.e., failure to fully process grievances against the employer regarding the need to take physicals. Regardless, the charging parties fail to present a coherent analysis and argument with citation to relevant authorities with respect to why we should reject the MERC's well-entrenched recognition and application of the principle that actions which solely concern internal union

---

[10] The MERC relied in part on *In re Teamsters Local 214*, MERC Decision and Order (Case No. CU10 G-35), issued February 26, 2013, p 8, wherein the MERC addressed an unfair-representation claim, rejecting the charging party's claim on the basis that the union's "failure to provide her with information she requested in her capacity as union steward involves the internal structure and affairs of the labor organization and is outside the scope of PERA."

[11] We also note that the charging parties did not file transcripts, documentary evidence, or other papers with the MERC that were associated with the AFSCME proceedings, such that the MERC could have undertaken the proper examination of the "competing organization" argument even had it been presented to the MERC.

-10-

affairs and do not affect employment relationships fall outside the scope of the PERA.[12]  As stated by our Supreme Court in *Mudge v Macomb Co*, 458 Mich 87, 105; 580 NW2d 845 (1998):

> "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow." [Citation omitted.]

The charging parties do argue in conclusory form that "[n]owhere in PERA does it limit the scope of the [MERC] in dealing with internal union issues" and that the "MERC has an internal policy that they do not wish to deal with internal union issues, even when it violates the members['] rights contained in [the PERA]."  However, the charging parties fail to address and analyze *Goolsby*, the preeminent case on the duty of fair representation, fail to adequately tackle the MERC precedent relied on by the ALJ and the MERC in disposing of this case, and fail to recognize the plethora of opinions from foreign jurisdictions that undermine their position.  And the charging parties also fail to address and analyze MCL 423.210(2)(a) regarding the right of a union to prescribe membership rules, which the ALJ asserted was the underlying basis for the general principle that the MERC will not involve itself in internal union matters that do not affect a member's employment.  We note that the charging parties repeatedly acknowledged that the expulsions had not interfered with or impacted their employment relationship with the University of Michigan.

In sum, the charging parties' argument that there was no evidence of a "competing organization" for purposes of AIC, art X, § 2.E., was not properly preserved and is also waived due to inadequate briefing.  Given that agency interpretations are entitled to respectful consideration, *In re Complaint of Rovas*, 482 Mich at 97, we are not prepared to substantively

---

[12] We decline to take a position on whether the MERC rulings are consistent with *Goolsby*.  That said, we do note that courts in other jurisdictions have consistently ruled contrary to the view espoused by the charging parties.  See *United Brotherhood of Carpenters & Joiners of America v Metal Trades Dep't, AFL-CIO*, 770 F3d 846, 849 (CA 9, 2014) (" '[T]he duty of fair representation extends only to matters involving an employee's dealings with his employer and ordinarily does not affect an employee's relationship with the union structure.' ") (citation omitted); *Kolinske v Lubbers*, 229 US App DC 157, 167; 712 F2d 471 (1983) (the duty of fair representation extends to matters affecting a union member's employment); *In re Berich*, 804 NYS2d 833, 834; 23 AD3d 904 (2005) ("A union's duty of fair representation does not apply to internal union membership decisions not affecting the terms and conditions of employment.").  The Ninth Circuit in *United Brotherhood of Carpenters*, 770 F3d at 849, did warn that "merely labeling an arbitrary decision 'internal' will not relieve the union of its duty, because even internal union affairs may 'have a substantial impact upon the external relationships of members of the unit to their employer.' " (Citation omitted.)

address, let alone possibly overrule, numerous decisions by the MERC regarding internal union matters, absent properly preserved arguments and adequate briefing.

With respect to the charging parties' arguments under the ELCRA, the LMRDA, and the NLRA, we agree with the reasons given by the MERC for rejecting these arguments. These arguments are inadequately briefed, were not properly preserved in filings with the ALJ, are not relevant, do not fall within the scope of the MERC's jurisdiction, are unpersuasive, and/or simply do not demand reversal. We appreciate that the charging parties are acting as pro per litigants, but their appellate brief is rambling, difficult to understand and follow, indecipherable at times, undeveloped, and not in full compliance with MCR 7.212(C).

We reject all of the arguments made by the charging parties and affirm the MERC with respect to the first case.

## 2. THE SECOND MERC CASE

As indicated above, the second MERC case concerned respondent union's actions in precluding the charging parties from participating in a contract ratification vote, given their expulsion from respondent union. The MERC upheld respondent union's actions and dismissed the charging parties' challenge, concluding that a union does not violate the PERA by preventing nonmembers from voting on an employment contract. On appeal, many of the arguments posed by the charging parties revisit the underlying expulsion decision, which was affirmed by the MERC and now by this Court. In *Leahy v Orion Twp*, 269 Mich App 527, 530; 711 NW2d 438 (2006), this Court discussed the doctrine of collateral estoppel, stating:

> Collateral estoppel bars relitigation of an issue in a new action arising between the same parties or their privies when the earlier proceeding resulted in a valid final judgment and the issue in question was actually and necessarily determined in that prior proceeding. The doctrine bars relitigation of issues when the parties had a full and fair opportunity to litigate those issues in an earlier action. [Citations omitted.]

Here, all of the elements of collateral estoppel are satisfied and the charging parties are barred from relitigating the issue whether respondent union properly expelled them from the union. We also note that the charging parties were no longer paying union dues or agency fees when they were barred from voting in the ratification election.

Next, we agree with the charging parties that the inability of an employee to vote on an employment contract, which would, of course, define the terms and conditions of employment, is a matter that could affect the employee's relationship with his or her employer. But the MERC did not rule otherwise and that is not the issue in this second case, although it was an issue in the first case with respect to the expulsions. Rather, the MERC relied on a prior decision in *Lansing Sch Dist*, 1989 MERC Lab Op 210, in which the MERC ruled:

> We have never held that a union is required to open up its contract ratification procedures or other decision making mechanisms to non-members.

PERA does not set standards for internal union democracy or even mandate that a contract be submitted to the union's membership for ratification before becoming effective. Since the allegations here do not indicate that the Charging Parties were given less of an opportunity to participate in the Union's decision making than that usually granted to non-members, the charges do not state a claim of unlawful discrimination.

The "right to work" version of MCL 423.209, as well as the previous version of MCL 423.209, which applied on the date of the ratification vote, provides and provided that public employees may "engage in lawful *concerted* activities for the purpose of *collective* negotiation or bargaining or other *mutual* aid or protection[.]" (Emphasis added.) Despite the charging parties' reliance on MCL 423.209, this language simply does not provide an *individual nonmember*, who, by definition, would not be engaged in a *concerted* activity for the purpose of *collective* negotiation, with the right to vote on a contract bargained-for by a union on behalf of its members. As indicated by the MERC, there is no provision in the PERA that supports the assertion by the charging parties that nonmembers have a protected right to vote in a ratification election. And it is entirely irrelevant to the analysis that the charging parties were involuntarily expelled members, rather than members who voluntarily relinquished their union membership; the charging parties were nonmembers.[13]

As discussed in *Afro-American Police League v Fraternal Order of Police, Chicago Lodge No 7*, 553 F Supp 664, 668 (ND Ill, 1982):

> Employees within the bargaining unit who are not union members . . . need not be afforded the right to vote on the ratification of a collective bargaining agreement. The only obligation owed such nonmembers by the union is the duty of fair representation. That duty is not violated by the mere failure of the union to allow the nonmembers to vote on the contract.

Moreover, we also note that the AIC's Bill of Rights provides, "*Members* shall have the right to full participation, through discussion and vote, in the decision-making processes of the union, . . . includ[ing] decisions concerning the acceptance or rejection of collective bargaining contracts[.]" (Emphasis added.) Therefore, the AIC also did not provide the charging parties with a right to vote in the contract ratification election.

The MERC's ruling is sound, and to the extent that we have not already touched on an issue involved in this second case, we adopt the MERC's opinion on those matters. In sum, none of the arguments posed by the charging parties demands a reversal.

---

[13] We also reject the argument by the charging parties that a statement made by the ALJ in the first case supports their position on the right to vote in the second case. The remark is irrelevant to this case, taken out of context, and ultimately does not mandate a different analysis and conclusion.

## III.  CONCLUSION

The charging parties have not established that the MERC's rulings were unsupported by competent, material, and substantial evidence on the record considered as a whole.  Nor have the charging parties established that the MERC's rulings were in violation of the constitution or a statute, were affected by a substantial and material error of law, or were otherwise unauthorized by law.  Accordingly, we affirm the MERC's rulings allowing the expulsions from respondent union to stand and allowing respondent union to bar the charging parties from participation in contract ratification elections.

Affirmed.  Having fully prevailed on appeal, taxable costs are awarded to respondent union pursuant to MCR 7.219.


/s/ William B. Murphy
/s/ Cynthia Diane Stephens
/s/ Michael F. Gadola