# STATE OF MICHIGAN

# COURT OF APPEALS

SHALBHADRA BAFNA,

        Plaintiff-Appellant,

v

BRYNMAWR CONDOMINIUM
ASSOCIATION,

        Defendant-Appellee.

UNPUBLISHED
April 19, 2018

No. 338093
Oakland Circuit Court
LC No. 2016-153680-CZ

Before: BORRELLO, P.J., and SHAPIRO and TUKEL, JJ.

PER CURIAM.

In this dispute with his condominium association, plaintiff, Shalbhadra Bafna, appeals as of right the trial court's order granting summary disposition in favor of defendant, Brynmawr Condominium Association, pursuant to MCR 2.116(C)(10). Because plaintiff received the requested documents, we affirm.

## I. BACKGROUND

This case arises out of a dispute involving plaintiff's requests to view certain records kept by defendant. Plaintiff clearly has a long list of perceived grievances against defendant, but plaintiff's alleged claims of action and legal arguments are, at best, difficult to understand.

Plaintiff became a resident of Brynmawr Condominium Association in October 2011. At some point, plaintiff moved out of this residence but maintained his condominium ownership. The instant lawsuit began when plaintiff, acting *in propria persona*, filed a complaint on June 27, 2016, essentially alleging that defendant had wrongfully denied him from inspecting certain records that defendant's bylaws gave him a right to inspect, that plaintiff was not given certain details about board members, that plaintiff was only allowed to attend a portion of a board meeting rather than the entire meeting, that defendant did not have a clause in its bylaws providing that court costs would be paid to a co-owner who prevailed in court on a claim that defendant violated its bylaws, and that defendant gave incomplete information to co-owners about court cases.

More specifically, plaintiff alleged that he had repeatedly asked defendant to permit him to inspect records from 2015 and that defendant had denied his requests. Plaintiff alleged that defendant's acts violated the association bylaws and MCL 559.157, which is contained within

-1-

the Michigan Condominium Act, MCL 559.101 *et seq.* According to plaintiff, defendant ignored his requests as it had done in the past, and plaintiff noted that he had filed two previous lawsuits against defendant "for similar matter more or less." Plaintiff further alleged that he asked at defendant's annual meeting on June 16, 2016, about his pending record-inspection request but was not given an answer to this question, and defendant did not give an update on plaintiff's legal cases during the annual meeting. Plaintiff also asserted that when he asked about new board members' "designation, duties qualification and terms of service," he was only provided with a list of the board members' designations and terms, contrary to the alleged requirement in the bylaws that defendant provide details about board members' duties and qualifications upon request. Additionally, plaintiff alleged that defendant only allowed him, as a co-owner, to attend the first 10-15 minutes of board meetings, although meeting minutes were available for inspection by co-owners. Plaintiff also alleged that defendant was required by MCL 559.207 to have a bylaw provision requiring costs to be paid to a co-owner who prevails in a court action against defendant, but defendant had not amended its bylaws to add such a provision.

Finally, plaintiff alleged that defendant's explanation at the 2015[1] annual meeting regarding the status of plaintiff's litigation against defendant was somehow incomplete or inaccurate, apparently because the explanation did not fully include all of plaintiff's various claims of wrongdoing against defendant and the exact details of the terms of disposition for the litigation. According to plaintiff, defendant was "actually involved in character assassination and making other co-owners to believe that plaintiff is at fault and unnecessarily bringing cases to court and thus expenses to association, when truth is different."

Plaintiff requested that the trial court order defendant "to allow record inspection to plaintiff when requested without restriction of time period as long as plaintiff is legitimate co-owner"; to "provide full information about board members as per bylaws to plaintiff"; to "amend by laws [sic] for cost to co owner [sic] in case, if successful against defendant in court of law"; to allow plaintiff to "attend full board meets [sic] without intervention"; to "clarify FACTS about past court cases to all co-owners"; and "to pay legal cost and punitive damages for repeated illegality $5000."

In support of his complaint, plaintiff attached copies of emails from 2015 and 2016 that he had sent to defendant's board members and Michael Koonce at Kramer-Triad Management Group. It appears that Koonce was the property manager for defendant. In these emails, plaintiff requested the production of various records for inspection, such as financial statements, insurance policy coverage, statements showing any co-owners who were delinquent on paying dues, records of co-owner units that were subject to liens and the amounts of those liens, and board meeting minutes. Plaintiff further indicated in these emails that he had not received any response to his record inspection requests from the "agent," which presumably was a reference to Koonce as the property manager. Plaintiff also wrote in these emails that as a result of not

---

[1] Although this claim seems somewhat unclear and confusing, it appears that plaintiff is complaining about the explanation of the litigation that appeared in the 2015 annual meeting minutes, which were discussed at the 2016 annual meeting.

receiving a response, he would "be forced for court directive in near future to get records for inspection not asked yet and not related to case decided of [sic] 2014." Plaintiff also wrote that the "record inspection is ongoing process without limitation and these records are newly generated and were not there so could not be asked in past litigation as not being allowed to be inspected." Plaintiff also requested in a subsequent email the "names with details of current board members as per bylaws, which includes designation, duties, qualification and terms of office." Koonce responded to this email by providing a list of defendant's board members with their respective positions and terms in office. Koonce further stated in his email response to plaintiff that "[a]ll Board members can be reached by forwarding written correspondence or email to the Property manager." In these emails, plaintiff never gave any discernable explanation for needing to inspect the various records that he listed.[2]

Finally, plaintiff attached what apparently purports to be the minutes from the 2015 annual meeting where the status of his litigation with defendant was explained, as well as an email that plaintiff sent to Koonce and defendant's board members explaining what plaintiff believed to be the factual discrepancies in the explanation. According to plaintiff, the minutes incorrectly stated that he was provided with records before his 2012 lawsuit, and the minutes did not explain that he filed his second lawsuit as a result of being denied a record inspection in 2013. The 2015 annual meeting minute were an agenda item for the 2016 annual meeting.

The record also contains copies of emails that plaintiff sent to Koonce and defendant's board in 2016, requesting (1) "[c]ontract copy for 2016 with board and management company, landscaping, snow removal along with competitive bids for cost effectiveness"; (2) contracts for "any other contractor or employee hired for association work to do work directly through board or indirectly through agent"; (3) the "record inspection contract between [Kramer-Triad Management Group] and board and also with other contractors"; and (4) the year's proposed budget. These emails also did not include any other additional explanation of plaintiff's reasons for requesting these records.

Additionally, plaintiff attached to his complaint copies of email communications between plaintiff and Koonce from 2013 and 2014, indicating that plaintiff wanted to inspect certain records that included copies of defendant's contract with Kramer-Triad Management Group and the amount of legal expense details related to the litigation involving plaintiff. Plaintiff also did not provide a reason for needing to view the records in these emails.

On November 7, 2016, defendant filed a motion for a protective order and to quash discovery requests from plaintiff. In the motion, defendant indicated that plaintiff had served defendant with 177 interrogatories, had served defendant with 34 more interrogatories six days later, and that most of the interrogatories were "incomprehensible."

---

[2] In a portion of one email, plaintiff did state, "I need to see **insurance policy coverage** taken for common element limited common element and to know does it cover inner wall of the unit ([]unfinished without paint coverage= drywall) and thus structures between inner and outer wall also[]?" However, while plaintiff indicated *what* information he sought, he did not explain *why* he needed this information.

At the November 23, 2016 hearing on the motion, defense counsel indicated that plaintiff had subsequently submitted a "simplified version" of his interrogatories that still effectively consisted of 133 interrogatories, most of which dealt "with how the Board handled the prior lawsuits and the record production and things like that." Defense counsel further noted that plaintiff, in addition to asking to review records from 2015 and 2016, was asking for records related to "legal expenses from the last lawsuit and insurance information from prior years and things like that, that were—that were the subject of the prior lawsuits that were dismissed." After further discussion between defense counsel and the trial court, defense counsel admitted that plaintiff, as a co-owner, was entitled to the amount that defendant spent to defend plaintiff's lawsuit. The trial court instructed defendant to provide the total amount spent in legal fees related to plaintiff's lawsuit.

During the hearing, the trial court also sought clarification regarding plaintiff's cause of action as follows:

> *The Court*: I want to know what your—what this complaint is based on.
>
> [*Plaintiff*]: In this case the last six months I asked for record inspection as per bylaws, that you're able to go and able to see the records of the—depending in time, the list of what's there.
>
> *The Court*: Wait. I don't understand, sir. You—this lawsuit is based on being able to see the Association's records?
>
> [*Plaintiff*]: Yeah. I wanted to see the Association records and they did not answer any letter for associated costs. So I went to the annual meeting. In the annual meeting I asked the question, that—why they're not responding to my questions about the inquiries, that I want to come and see the 2015 contracts given to them and to the HN (sic). There are the two main issues there. Then they did not reply.
>
> In the annual meeting they say this is not the time to talk about the record inspection. So I left the annual meeting, they did not discuss.
>
> Then I wrote a question that was the present Board members and where to talk about the record inspection. Nobody replied.
>
> So then—that's the case.
>
> * * *
>
> *The Court*: You're telling me—I—sir, you're telling me that your lawsuit is based on the fact that you want to be able to see the Association's records of 2015.
>
> [*Plaintiff*]: Yeah. That's—that's correct.

Defense counsel then indicated that defendant would willingly provide plaintiff with a copy of the records for all of 2015 and 2016 up to the time of the hearing, as well as the board meeting minutes for 2015 and 2016. Plaintiff indicated that he did not need the 2016 records[3] or board meeting minutes and that he only needed the 2015 records,[4] as well as "the contracts with the outside people and the contact [sic] with agent." Defense counsel agreed to "provide another copy of the contract with the management company."

With respect to the board member information, plaintiff explained that "after the annual meeting was over I wanted the new members list and the agent told me if you want to contact the Board member, just contact through me, agent, directly." Plaintiff further explained that "[i]n the past I used to contact directly by phone to the Board members" but "[t]his time the rule changed." Defense counsel indicated that plaintiff had all of the contact information to contact the board members because he had been given a directory of all of the owners in the association in 2015. Defense counsel further stated:

> The issue here, Judge, is he—he looks at the records, then he peppers them with millions of questions. They haven't—these Board members, as you can imagine, are not professionals. They're residents. They don't get paid. They have a management company, professional management company that—that handles all the—the management of the condominium.

The trial court ordered that all of the discovery requests would be stricken, and the trial court further ordered defendant to provide plaintiff with a hard drive or flash drive containing the records that plaintiff sought. An order was entered the same day stating in pertinent part as follows:

> It is hereby ordered Plaintiff's [illegible] Discovery Requests are stricken; however, Defendant is ordered to produce the following on a CD to Plaintiff:
>
> 1. Financial records from 2015 (including landscape and snow removal vendors)
>
> 2. Management contract for 2015
>
> 3. Total of legal fees 2015 for prior lawsuit [Order, November 23, 2016.]

On February 13, 2017, defendant moved for summary disposition pursuant to MCR 2.116(C)(7) and (10). Defendant argued that the records sought by plaintiff were clarified at the November 23, 2016 hearing; that defendant had provided plaintiff with the copy of the management company, snow removal, and landscaping contracts; that defendant had provided plaintiff with the 2015 financial records; and that plaintiff's equitable claim had become moot because plaintiff had been provided with the documents he sought. Defendant further argued

---

[3] Plaintiff specifically stated, "I don't want 2016 also."

[4] Plaintiff specifically stated, "I just want 2015, your Honor."

that the case evaluation panel had found plaintiff's monetary damages claim to be frivolous. Defendant attached the December 13, 2016 proof of service indicating that plaintiff had been served with "Defendant's financial records for 2015 (including landscape and snow removal contract); the Management Contract in effect for 2015 between Brynmawr Condominium Association and Kramer-Triad; and the total legal fees for defending the prior 2015 Bafna v Brynmawr Condominium Association case, which was $7,801.50."

Plaintiff filed a response to defendant's motion on March 1, 2017, in which he mostly made nonsensical arguments that are difficult to interpret. Plaintiff argued that defendant did not allow record inspections without a court order and had not allowed plaintiff to inspect records in this case until the lawsuit was filed, thus violating defendant's bylaws and provisions of the Michigan Condominium Act. Defendant often did not respond to plaintiff's communications. Plaintiff further argued that record inspection was an ongoing process rather than a single event and that defendant was not timely producing records. Plaintiff also argued that defendant had not provided additional documents requested by plaintiff on November 23, 2016,[5] and December 5, 2016.[6] Accordingly, plaintiff argued, his cause of action was not moot. Plaintiff asserted that the records were important because he is "well acquainted with functioning of association developers builders etc. and in past forced defendant to remove unwanted employee." Additionally, plaintiff discussed events related to previous lawsuits.

Plaintiff also complained about statements made by the trial court and defendant during the November 23, 2016 hearing, as well as the result that discovery requests were stricken, although plaintiff did not offer any legal analysis to demonstrate that the trial court's ruling was somehow erroneous. Plaintiff complained that his interrogatories were not burdensome but did not make any legal argument to demonstrate that discovery was somehow wrongfully limited. Plaintiff also asserted that the trial court should appoint a special master to inspect all of the documents and aid the trial court's decision-making process.

In support of his response, plaintiff included an affidavit in which he averred in pertinent part that he had requested at various times to be allowed to inspect defendant's records and received no response. Plaintiff also averred that he had made such requests to Kramer-Triad Management Group, which was referred to by plaintiff as defendant's "agent." Additionally, plaintiff averred that he made another request for records after defendant sent him records pursuant to the trial court's November 23, 2016 order, but defendant did not respond to plaintiff's additional request. Plaintiff also attached copies of additional emails he had sent to

---

[5] Plaintiff attached a copy of an email dated the day of the motion hearing, November 23, 2016, that he wrote to defense counsel in which he stated, "As, we talked can you add that in future records will be allowed to be examined without court orders by plaintiff as per bylaw, and condominium act. . .defeat will allow [sic]."

[6] Plaintiff attached a copy of an email dated December 5, 2016, that he wrote to Koonce, in which he asked "to see recently made road contracts terms condition written with contractor." Plaintiff did not provide any reason for requesting this contract.

Koonce in which he requested various types of information without asserting any reason for obtaining the information other than his desire to have it.

The trial court granted summary disposition in favor of defendant. In its written order, the trial court noted that plaintiff had clarified the information he sought on the record during the November 23, 2016 hearing, that defendant had filed an affidavit and proof of service with the Court establishing that plaintiff was given the requested documents, and that defendant had moved for summary disposition on the ground that plaintiff's claims were now moot. In reaching its conclusion that defendant's motion would be granted, the trial court reasoned that plaintiff had "not explain[ed] or rationalize[d] why he is entitled to further relief," and had "entirely failed to establish that a genuine issue of material fact exists for trial."

This appeal followed.

## II. STANDARD OF REVIEW

A trial court's grant of summary disposition is reviewed de novo. *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 506; 885 NW2d 861 (2016). "A motion for summary disposition under MCR 2.116(C)(10) requires the reviewing court to consider the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Rambin v Allstate Ins Co*, 495 Mich 316, 325; 852 NW2d 34 (2014) (quotation marks and citation omitted). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*.

## III. ANALYSIS

Although plaintiff's brief reads like a laundry list of complaints about the conduct of defendant and the trial judge, plaintiff essentially argues that summary disposition was improper because there were genuine issues of material fact regarding defendant's failure to provide plaintiff with records and information that he requested, contrary to defendant's obligations under its bylaws and the Michigan Condominium Act. However, as explained below, plaintiff's cause of action is moot, and the trial court did not err by granting defendant's motion for summary disposition.

As an initial matter, plaintiff waived any claim in the instant lawsuit that he sought to obtain records beyond those specified in the trial court's November 23, 2016 order. "[W]aiver has been defined as the intentional relinquishment or abandonment of a known right." *Grant v AAA Michigan/Wisconsin, Inc (On Remand)*, 272 Mich App 142, 148; 724 NW2d 498 (2006) (quotation marks and citation omitted). "A party who expressly agrees with an issue in the trial court cannot then take a contrary position on appeal," *id*., and a party waives a claim of error by expressing satisfaction with the trial court's action at issue, *Moore v Detroit Entertainment, LLC*, 279 Mich App 195, 224; 755 NW2d 686 (2008).

In this case, plaintiff specifically indicated at the November 23, 2016 hearing that despite his seemingly vast record inspection request, his complaint in the instant cause of action was

actually directed solely at obtaining defendant's 2015 records and defendant's contracts with its management company and providers of landscaping and snow removal services. Furthermore, plaintiff specifically stated that he did not want any of defendant's 2016 records, even though defendant had offered to provide them. The trial court then ordered the production of the records requested by plaintiff. Therefore, plaintiff waived any claim he may have had to any additional records through the instant lawsuit. *Grant*, 272 Mich App at 148; *Moore*, 279 Mich App at 224.

Further, the record indicates that defendant provided the records described in the trial court's November 23, 2016 order to defendant, and defendant has not introduced any evidence to the contrary. Thus, there is no genuine issue of material fact that plaintiff was not given the records he requested. As a result, plaintiff's cause of action is now moot. "A case is moot when it presents only abstract questions of law that do not rest upon existing facts or rights," and "[a]n issue is deemed moot when an event occurs that renders it impossible for a reviewing court to grant relief." *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). "As a general rule, an appellate court will not decide moot issues." *Id*. Because plaintiff has already received the records he sought, there is no further relief that this Court could grant, and plaintiff's claim is moot. *Id*. Accordingly, the trial court did not err by granting summary disposition in favor of defendant. *West*, 469 Mich at 183.

Moreover, to the extent plaintiff argues that he is entitled to an order granting further unrestricted record inspections and "permanent ongoing relief," such that this action would somehow not be moot, we conclude that summary disposition for defendant would nonetheless still be proper. Plaintiff made multiple requests to inspect various records held by defendant, but there is no evidence that plaintiff had any reason for his numerous record inspection requests other than asserting what he apparently believes is an unlimited right to inspect all of defendant's records according to his own whim. However, we do not believe that plaintiff's right to inspect defendant's records is unlimited. In this case, it would still be correct to grant summary disposition in defendant's favor because plaintiff has not demonstrated that he had a "proper purpose" for obtaining such a broad record inspection under MCL 450.2487, which is contained within the Nonprofit Corporation Act, MCL 450.2101 *et seq.*, and the lower court record in this case indicates that defendant is a Michigan nonprofit corporation. Plaintiff's "idle curiosity or mere speculation of mismanagement" are not sufficient to establish a "proper purpose" that would justify a record inspection. See *North Oakland Co Bd of Realtors v Realcomp, Inc*, 226 Mich App 54, 59; 572 NW2d 240 (1997). This Court may affirm a trial court's summary disposition ruling that reaches the correct result, even if we rely on different reasoning. *Kyocera Corp v Hemlock Semiconductor, LLC*, 313 Mich App 437, 449; 886 NW2d 445 (2015).

Next, plaintiff raises a host of unintelligible arguments without providing any discernable analysis of how the trial court committed any legal error that would entitle him to any relief in this case. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow." *Goolsby v City of Detroit*, 419 Mich 651, 655 n 1; 358 NW2d 856 (1984) (quotation marks and citation omitted). "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *Houghton ex rel Johnson v Keller*, 256 Mich App 336, 339-340; 662 NW2d 854 (2003). Therefore, these

arguments by plaintiff are abandoned. *Goolsby*, 419 Mich at 655 n 1; *Johnson*, 256 Mich App at 339-340.

Finally, plaintiff argues that pursuant to MCL 559.207, he should be awarded court costs because he was only able to obtain defendant's records through litigation, and he further argues that he should be awarded punitive damages. As with many of plaintiff's other appellate arguments, plaintiff also does not develop this argument beyond merely asserting it. Therefore, this argument is also abandoned. *Johnson*, 256 Mich App at 339-340. Nonetheless, this argument is without merit. MCL 559.207 provides in pertinent part that a "co-owner may maintain an action against the association of co-owners and its officers and directors to compel these persons to enforce the terms and provisions of the condominium documents" and that "[i]n such a proceeding, the association of co-owners or the co-owner, if successful, shall recover the costs of the proceeding and reasonable attorney fees, as determined by the court, *to the extent that the condominium documents expressly so provide*." (Emphasis added.) Here, plaintiff does not point to any provision in the condominium documents that provides for the recovery of any costs or damages in an action against the association to obtain a record inspection, and MCL 559.207 does not include any requirement that such a provision exist in the bylaws. Therefore, the statutory language does not support plaintiff's assertion.

Affirmed. Defendant, having prevailed, may tax costs. MCR 7.219(A).

/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro
/s/ Jonathan Tukel